UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF WISCONSIN

BRIUNA HARPER,
213 Stable Dr.,
Waxahachie, TX 75165

CASE NO.: 25-cv-686

Plaintiff,

v.

TCC WIRELESS LLC
160 Greentree Dr. Ste. 101
Dover, DE 19904,

and

XYZ Insurance Company
Address unknown

Defendants.

## COMPLAINT

The above-named Plaintiff, by her attorneys, Lawton Cates, S.C., as and for their Complaint against the Defendants named above, allege and show to the Court as follows:

### Introduction

1. T-Mobile is the third largest wireless carrier in the United States. It has over 20,000 storefront locations.

2. T-Mobile and its agents fail to safeguard personal data of its customers and does not use customary practices or procedures to protect its customers' privacy and information.

3. Everyone knows that cellular devices contain consumers' private communications, images, videos, searches, and more.

4. For many years retail store employees have obtained sensitive information about T-Mobile customers, including explicit photographs and videos. For instance, in October of 2022 a T-Mobile customer in Washington had their personal information, including intimate photos and videos stolen from her phone by an employee of a T-Mobile store.

5. Defendants did not take any steps in response to this incident, or any other incident, to improve their employee training or procedures that would address the issue of employees taking sensitive customer information.

## Parties

1. Plaintiff Briuna Harper ("Plaintiff") is an adult citizen and resident of the State of Texas, residing at 213 Stable Dr., Waxahachie, Texas 75165.

2. During the school year, Plaintiff resides at W3718 South Drive, Plymouth, Wisconsin 53073.

3. Defendant TCC Wireless, LLC ("TCC Wireless") is a corporation incorporated in the state of Delaware with a principal place of business of 160 Greentree Dr. Suite 101, Dover, Delaware 19904.

4. Defendant XYZ Insurance Company ("XYZ") is one or more insurance companies issuing liability insurance covering TCC Wireless, or otherwise covering the occurrence hereinafter described. Said policy was in full force and effect at the time of said occurrence.

5. By the terms of said policy, XYZ is liable for paying all damages caused by TCC Wireless's acts or omissions in this action.

## Jurisdiction

6. Jurisdiction is proper pursuant to 28 U.S.C. §1331.

7. Plaintiff's civil action arises under federal law.

8. Jurisdiction is proper pursuant to 28 U.S.C. §1332(a).

9. Plaintiff is a resident of the State of Texas, and all Defendants are registered corporations of the State of Delaware.

10. The amount in controversy exceeds $75,000.

11. Defendant TCC Wireless purposefully avails itself of the privileges of conducting activities in the state of Wisconsin including maintaining and operating one or more retail T-Mobile stores, selling phones and service plans and hiring and managing employees.

12. All events giving rise to this claim occurred in Sheboygan County, Wisconsin.

## Relevant Facts

13. T-Mobile offers for sale to the public mobile phone services.

14. Based on information and belief, T-Mobile contracts with licensees to provide T-Mobile service plans to the public.

15. Based upon information and belief, TCC Wireless is a licensee of T-Mobile and TCC Wireless's agents sell phone service plans and mobile phones to the public.

16. TCC Wireless offers for sale to the public T-Mobile phone service and mobile phones. TCC Wireless has T-Mobile stores in 24 states with over 200 stores.

17. TCC Wireless had knowledge that its employees and agents sell T-Mobile phone services and mobile phones to the public.

18. Based upon information and belief, TCC Wireless had knowledge that as a necessary part of the process of selling phone service plans and mobile phones to the public, its employees licensees agents must access customer phones that contain personal information.

19. TCC Wireless, LLC hires, trains and manages employees and agents knowing that such employees and agents will access personal information on customer phones in the course of conducting the business of TCC Wireless.

20. TCC Wireless directs its employees and agents to access personal information on customer mobile phones to facilitate the sale of new phone service plans and/or new phones.

21. Based on information and belief, TCC Wireless was aware of the risk posed to their customers' data privacy when purchasing new phones and transferring data.

22. TCC Wireless established procedures and rules for handling customer personal data. These procedures are ineffective and, on information and belief, have not been updated even after numerous instances of employees taking private customer data.

23. On or around 2015, Plaintiff was a T-Mobile customer with a contract for T-Mobile phone service.

24. Plaintiff owned an iPhone 12 purchased from T-Mobile that she used with her T-Mobile phone service.

25. Sometime before November 9, 2024, Plaintiff's iPhone 12 was operating more slowly, and Plaintiff wished to upgrade it.

26. On November 9, 2024, the Plaintiff drove and parked at 2932 South Business Drive, Sheboygan, ("the Store") the location of a T-Mobile retail store.

4

27. The Store was offering an incentive to customers encouraging them to trade in their devices. If customers upgraded their phone to a newer model, they could get a credit on the price of the newer model if they relinquished their old one at the Store. The Store offered consumers in-store, turn-key service to migrate their data that included pictures, apps, contacts, etc. from their old device to their new device.

28. The Plaintiff entered the Store at approximately 2:15 p.m.

29. At that time, a TCC Wireless employee, Farlane Nicholas Bedford ("Bedford") was behind the counter speaking with a group of people that appeared to be a family.

30. Plaintiff waited for the family to leave and then approached the counter.

31. Plaintiff reasonably believed that Beford was an agent of the Defendant who was assisting her to upgrade her T-Mobile iPhone 12.

32. T-Mobile and its partner stores represent to its customers, including plaintiff, that it has safeguards in place to protect consumer information. For instance, T-Mobile's website provides:

> We use administrative, technical, contractual, and physical safeguards designed to protect your data. For example, when you contact by phone or visit us in our stores, we have procedures, in place to make sure that only the primary account holder or authorized users have access.

33. Plaintiff asked Bedford whether she could upgrade her iPhone 12.

34. Bedford stated to Plaintiff that she could in fact upgrade her iPhone to a newer model.

35. Bedford presented to the Plaintiff three different iPhone models including an iPhone 14, 15, and 16.

36. Plaintiff chose the iPhone 16 model.

37. Beford instructed Plaintiff that she would need to turn over to TCC Wireless her old iPhone 12 to receive the new iPhone 16.
38. Plaintiff was instructed by Bedford that the anti-theft "find my phone" feature would need to be deactivated to transfer her T-Mobile service from her iPhone 12 to the new iPhone 16.
39. The deactivation process would take sixty minutes.
40. Plaintiff initiated the deactivation process on her iPhone 12 at 2:32 p.m.
41. Plaintiff left the store and returned to her car where she waited for one hour.
42. At 3:32 p.m., Plaintiff returned to the Store.
43. Beford appeared to be assisting a family at that time.
44. Beford directed another TCC Wireless employee present to go and retrieve a new iPhone 16.
45. Bedford then asked Plaintiff her age.
46. Bedford also asked Plaintiff which school she attended.
47. Plaintiff inquired of Bedford the process for transferring data from her iPhone 12 to the iPhone 16.
48. Bedford stated that he would "clone" the Plaintiff's phone.
49. Bedford stated to the Plaintiff that she needed to input her iCloud password into her iPhone 12 in order to facilitate the transfer of her personal, private data to the iPhone 16.
50. Plaintiff complied and entered her password in front of Bedford to allow her data from her iPhone 12 to transfer to the new iPhone 16.
51. Plaintiff did not consent to the use of her personal information or her images by the Defendant.

52. Bedford asked Plaintiff to hold her iPhone 12 over the iPhone 16.
53. Once the data had been transferred, Plaintiff attempted to delete personal information present on her iPhone 12.
54. Bedford seized the iPhone 12 stating "I gotch you" and insisted he would ensure all personal information was deleted.
55. Bedford manipulated the iPhone 12 so as to appear to be deleting information.
56. Plaintiff asked if all personal files and information were deleted from the iPhone 12.
57. Bedford stated that all personal information was deleted from the iPhone 12.
58. Bedford affixed a sticker to Plaintiff's iPhone 12.
59. Plaintiff reasonably believed that at this time, based on Bedford's representations, that her old iPhone 12 would be wiped of all personal data and returned to factory settings.
60. Plaintiff did not entertain the thought that Defendant's employee would engage in the theft of her private information during a device upgrade, especially when she was required to give the employee full access to her device.
61. On November 10, 2024 at or around 8 a.m., Plaintiff discovered on her iPhone 16 that four text messages had been sent from her account the previous day at or around 4:46 p.m. to a phone number she did not recognize.
62. The first message said, "Yoo".
63. The second message contained two videos of the Plaintiff.
64. The third message was an iCloud link to multiple sexually explicit pictures and videos of the Plaintiff located in a hidden folder.
65. The fourth message was an iCloud link to multiple sexually explicit pictures and videos of the Plaintiff located in a hidden folder.

66. The Apple corporation confirmed that the texts were sent from an iPhone 12.
67. Plaintiff contacted the Sheboygan Police Department who investigated and arrested Bedford for downloading sexually explicit images and videos of the Plaintiff and distributing them.
68. The Sheboygan Police found personal sensitive photos and sexually explicit videos of the Plaintiff on Bedford's phone and/or on a web-based server.
69. Based on information and belief, Bedford was hired, managed and retained by Defendant, TCC Wireless.
70. Based on information and belief, Defendant TCC Wireless failed to take reasonable protections to protect the Plaintiff from harm.

<u>First Claim—2022 Reauthorization of Violence Against Women Act ("VAWA"), 15 U.S.C. §</u>
<u>6851</u>

71. The Plaintiff realleges the allegations contained in paragraphs 1 through 70 of this Complaint as if set forth in full herein.
72. Defendant, acting through their agent Bedford, disclosed Plaintiff's personal intimate visual depictions. These include visually identifiable depictions of her nude and engaging in sexually explicit conduct, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce
73. Defendant, acting through its agent Bedford, knew or recklessly disregarded the fact that Plaintiff did not consent to the disclosure.
74. Defendant, acting through its agent Bedford, effectuated a disclosure that was in and affecting interstate commerce and used means of interstate commerce.

8

75. Bedford was acting within the scope of his employment. Defendant is vicariously liable for Bedford's conduct.

## Second Claim—Negligence

76. The Plaintiff realleges the allegations contained in paragraphs 1 through 75 of this Complaint as if set forth in full herein.
77. Defendant was aware that their licensee, employees and agents, while conducting Defendant's business, access customer mobile phones.
78. Defendant's duty requires it protects Plaintiff from imminent criminal harm and reasonably foreseeable criminal conduct.
79. The harm that befell Plaintiff was foreseeable based on numerous and recent prior similar acts of data theft and privacy violations at T-Mobile stores.
80. Defendant was aware that customer phones contain personal, sensitive information.
81. Defendant failed to exercise ordinary care to ensure its employees do not access, download and carry away customer personal, sensitive information.
82. Defendant's failure to exercise ordinary care resulted in harm to the Plaintiff.
83. Plaintiff's injuries arose form circumstances that were reasonably foreseeable to Defendant because it was aware that its retail employees were routinely abusing their access to customers' private information during device upgrades and trade-ins.

## Third Claim—Negligent Misrepresentation

84. The Plaintiff realleges the allegations contained in paragraphs 1 through 83of this Complaint as if set forth in full herein.

85. Defendant misrepresented to the public that a person could bring their mobile phone to their store for purposes of an upgrade without personal, private information being put at risk.
86. The Plaintiff was a member of the public, believed this representation and relied upon it by coming to the store and presenting her mobile phone to the Defendant's agent.
87. By making this misrepresentation, Defendant was required to exercise a duty of care for the Plaintiff.
88. Defendant failed to exercise its duty of care proximately causing harm to the Plaintiff.

<u>Fourth Claim—Wis. Stat. § 995.50(2)(am)(1), (3) and (4)</u>

89. The Plaintiff realleges the allegations contained in paragraphs 1 through 88 of this Complaint as if set forth in full herein.
90. Defendant, acting through its agent Bedford, intruded upon the privacy of Plaintiff by accessing and carrying away her private, intimate visual depictions;
91. Based upon information and belief, Defendant, acting through its agent Bedford, made a public disclosure of facts regarding Plaintiff.
92. Defendant, acting through its agent Bedford, possessed actual knowledge that no matter of legitimate public concern existed regarding the disclosure of Plaintiff's private information.
93. Based upon information and belief, Defendant, acting through its agent Bedford, located Plaintiff's private, intimate visual depictions on the iCloud server that was accessible by others.
94. Defendant, acting through its agent Bedford, intrusion into Plaintiff's private images and videos was of a nature that would be highly offensive to a reasonable person; and

95. The intrusion occurred through accessing Plaintiff's protected mobile phone, the privacy of which was reasonably expected.

### Fifth Claim—Negligent Hiring and Retention:

96. The Plaintiff realleges the allegations contained in paragraphs 1 through 95 of this Complaint as if set forth in full herein.

97. Defendant failed to exercise ordinary care in the hiring, management and retention of Bedford in but not limited to:

    a. Allowing him unsupervised access to Plaintiff's private information;

    b. Failing to have supervised the transfer of private personal data;

    c. Other respects.

98. Defendant's negligence in hiring, managing, and retention of Bedford was a cause of Plaintiff's harm.

### Sixth Claim--Conversion

99. The Plaintiff realleges the allegations contained in paragraphs 1 through 99 of this Complaint as if set forth in full herein.

100. Defendant, acting through its agent Bedford, intentionally took control of Plaintiff's private, intimate representations.

101. Defendant, acting through its agent Bedford, acted without Plaintiff's consent.

102. Defendant, acting through its agent Bedford, seriously and permanently interfering with Plaintiff's ability to control the disclosure and viewing of said representations.

### Seventh Claim—Theft by Fraud: Wis. Stats. §895.446 and §943.20

103. The Plaintiff realleges the allegations contained in paragraphs 1 through 102 of this Complaint as if set forth in full herein.

104. Defendant, acting through its agent Bedford, took and carried away Plaintiff's property without her consent.

105. Defendant, acting through its agent Bedford, knew that Plaintiff had not consented.

106. Defendant, acting through its agent Bedford, intended to deprive the Plaintiff permanently of possession of the property.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

A. For actual damages provided under 15 U.S.C. §6851(b)(3).
   a. For liquidated damages provided under 15 U.S.C. §6851(b)(3).
   b. For costs of the Plaintiff's action, including reasonable attorney's fees and other litigation costs incurred, pursuant to 15 U.S.C. §6851(b)(3)(A)(i).

B. For damages compensating the Plaintiff for all damages and losses, including nonpecuniary losses including conscious pain and suffering, and emotional harm resulting from the Defendants violation of Wis. Stat. §995.50(2)(am)(1),(3), and (4).

C. For compensatory economic and non-economic damages available under the law.

D. For punitive damages pursuant to Wis. Stat. §895.043(3).

E. For actual damages pursuant to §895.466(3)(a), including retail or replacement value of lost property, whichever is greater.

   1 For all costs of investigation and litigation reasonably incurred pursuant to §895.466(3)(b).

   2 For exemplary damages pursuant to §895.466(3)(c).

F. For the costs, disbursements, and expenses incurred in prosecuting this action; and

G. For such other further relief as the Court may deem just and equitable.

**A JURY TRIAL IS HEREBY DEMANDED**

Dated this 9th day of May, 2025.

LAWTONCATES S.C.

By: _____
Dixon R. Gahnz, State Bar No: 1024367
Andrew J. Hysell, State Bar No.: 1053807
Attorneys for Plaintiffs

P.O. Box 2965
1050 E. Washington Ave. Ste. 330
Madison, WI 53703
P: (608) 282-6200
F: (608) 282-6252
dgahnz@lawtoncates.com
ahysell@lawtoncates.com