UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

BRIUNA HARPER,

    Plaintiff,

v.

TCC WIRELESS LLC and XYZ
INSURANCE COMPANY,

    Defendants.

Case No: 1:25-cv-00686-BBC

# MEMORANDUM IN SUPPORT OF DEFENDANT TCC WIRELESS LLC'S MOTION TO COMPEL ARBITRATION

Defendant TCC Wireless LLC respectfully submits this Memorandum of Law in support of its motion to compel arbitration and to dismiss this action (in lieu of filing an answer to the Complaint) because all of Plaintiff's claims are subject to an agreement to arbitrate. In the alternative, TCC Wireless requests that the Court stay all proceedings in this action pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.

This action arises of Plaintiff Briuna Harper's status as a T-Mobile customer. (*See* Compl., D.E. 1, ¶¶ 1–4, 11, 13–17, 23–70.) She maintains that her private information was stolen from her cellular phone from a store employee when she upgraded her cellular phone. She has asserted seven causes of action against TCC Wireless alleging, in essence, that it is responsible for the criminal activity of its former employee who assisted Plaintiff in the transaction.[1]

This action should proceed to arbitration under the unambiguous written arbitration

---

[1]     The employee was charged with Capture of an Intimate Representation without Consent (a Class 1 Felony), and Disorderly Conduct (a Class B misdemeanor). *State of Wisconsin v. Farland Nicholas Bedford*, Criminal Complaint, Case No. 2024SB0032787.

agreement between Plaintiff and T-Mobile and its agents. This agreement to arbitrate claims exists in numerous documents exchanged between them: the T-Mobile Service Agreement, the Trade In Terms Agreement, and the Equipment Installment Plan (EIP) Contract and Disclosures. The claims filed in this case fall squarely within the scope of the applicable arbitration clauses contained in these various documents. Notwithstanding, Plaintiff has filed a lawsuit in this Court seeking precisely the relief to which she is not entitled. Based on the written, valid, and enforceable arbitration provisions set forth in those documents, and because federal policy strongly favors resolving claims through arbitration under the FAA, the Court should grant TCC Wireless's motion to dismiss and compel Plaintiff to arbitrate her claims.

## BACKGROUND

### I. The parties

TCC Wireless is an authorized distributor of T-Mobile products and services, and operates retail stores selling cellular phones, accessories, and cellular phone plans, among other things, for T-Mobile. (Decl. of E. Tarasievich ("Tarasievich Decl."), **Exhibit 1**.) To that end, TCC Wireless is authorized to sell T-Mobile's products and services.

Plaintiff was an authorized user on the T-Mobile account of Maurice Lengyon. On October 27, 2023 she obtained an Apple iPhone 12 from one of TCC Wireless's retail stores located in Sheboygan, Wisconsin. (*See* 10/27/2023 Receipt, **Exhibit 2**.) She signed the receipt evidencing the transaction, which states:

> If you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions and any terms specific to your rate plan.
>
> If you have a device or accessory under one of our device programs, refer to your agreement for the specific terms and conditions of that program.
>
> **Disputes.** T-Mobile REQUIRES ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS. For details see T-Mobile's Terms and Conditions at www.T-Mobile.com/terms-conditions.

(*Id.*)

The T-Mobile Terms and Conditions at the referenced website provides that all disputes between the parties are subject to arbitration.[2]

**DISPUTE RESOLUTION**

**\*HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**

By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit.

*Individualized Dispute Resolution and Arbitration.* **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES, OF ANY NATURE, INCLUDING TORT AND STATUTORY CLAIMS, IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD, ON AN INDIVIDUAL BASIS, THE SAME DAMAGES AN RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES**

This includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below).

The arbitration is to be administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules. (Ex. 3.)

A little over a year later, Plaintiff entered a different retail store operated by TCC Wireless to upgrade her iPhone 12 to an iPhone 16. (*See* 11/09/2024 Receipt, **Exhibit 4**; Compl. ¶ 25.) The Receipt evidences the transaction. As with the earlier receipt, Plaintiff agreed that any dispute she had would be resolved by arbitration and again signed the receipt.

---

[2] The T&C's also state that by accepting these T&C's "you agree, on behalf of yourself, any person on your account, an Authorized user, and any person you allow to use the Services, Product, or your Device, to be bound by these provisions." (Terms and Conditions, **Exhibit 3**.)

When Plaintiff upgraded her phone to an iPhone 16, she traded in her old iPhone 12. In connection with that trade-in, she agreed to the Trade In Terms, which she electronically signed. That Trade-In-Agreement provided that

> By clicking accept or sending in your Device you acknowledge you have read and agree to the T-Mobile Trade-In Terms and Conditions (**"Trade-In T&Cs"**) located at http://www.t-mobile.com/Trade-InTerms. You further agree you are entering into this agreement to sell one or more of your Devices via T-Mobile's Trade-In Program and:
>
> 1. You are the sole owner, or will pay off any outstanding balance to become the sole owner, and the Device is not stolen property.
>
> 2. You accept the conditions and requirements of the Promotional Offer and/or Offer Price, as applicable, and are giving up full ownership rights and any other value to your Device. This transaction is final and non-refundable. Your Device will not be returned (except as provided in the Trade-In T&Cs or as required by law).
>
> 3. You will remove all Device data and personal information, passwords, security software, or user locks.

(*See* 11/09/2024 Trade In Terms, **Exhibit 5**.) The Trade-In T&C's contain an agreement to arbitrate disputes.

> **GENERAL TERMS.**
>
> Dispute Resolution. You agree that the dispute resolution provisions, including individual mandatory arbitration unless you previously opted out, set forth in T-Mobile's Terms and Conditions apply to all disputes. If you are a T-Mobile business or government customer, you agree that the dispute resolution provisions in your business or government agreement will apply to all disputes.

(T-Mobile Trade-in Program Terms and Conditions, **Exhibit 6**.)

Finally, in connection with obtaining the new iPhone 16, Plaintiff electronically signed an Equipment Installment Plan (EIP) Contract and Disclosures ("EIP Agreement"), which outlines the monthly financing of the new phone. (EIP Agreement, **Exhibit 7**.) The EIP Agreement, as with the other agreements to which she agreed, also contained a dispute resolution provision and agreement to arbitrate disputes.[3]

---

[3] A "Covered Buyer" under this EIP Agreement is someone who is "an active service member or an active Guard or Reserve duty member, or you are a qualifying dependent of that member." (Ex. 7 at 3.) No evidence exists that this applies to the parties at issue here. Plaintiff does not allege (nor

> **\* Dispute Resolution and Arbitration.** If you are a Covered Buyer, the following provisions relating to arbitration do not apply to this agreement. This section describes how any disputes between you and T-Mobile will be resolved. WE AND YOU EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT. This includes any claims against other parties relating to services or equipment provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) whenever you also assert claims against us in the same proceeding. You and we also each agree that this agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).
>
> Notwithstanding the above, YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE EARLIER OF THE DATE YOU PURCHASED EQUIPMENT FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline"). You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or online at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you will be required to pursue your claim in arbitration or small claims court.**
>
> For any and all disputes or claims you have, you must first give us an opportunity to resolve your claim by sending a written description of your claim to the address provided in the "Notices and Customer Communications" Section below. You and we each agree to negotiate your claim in good faith. You agree that you may not commence any arbitration or court proceeding unless you and we are unable to resolve the claim within 60 days after we receive your claim description and you have made a good faith effort to resolve your claim directly with us during that time.
>
> **If we are unable to resolve your claim within 60 days despite those good faith efforts, then either you or we may start arbitration or small claims court proceedings.** To begin arbitration, you must send a letter requesting arbitration and describing your claim to our registered agent (see the "Notices and Customer Communications" Section below) and to the American Arbitration Association ("AAA"). The arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced, except to the extent any of those rules conflicts with this agreement, in which case this agreement will govern. The AAA rules are available at www.adr.org. If the claims asserted in any request or demand for arbitration could have been brought in small claims court, then either you or we may elect to have the claims heard in small claims court, rather than in arbitration, at any time before the arbitrator is appointed, by notifying the other party of that election in writing. The arbitration of all disputes will be conducted by a single arbitrator, who shall be selected using the following procedure: (a) the AAA will send the parties a list of five candidates; (b) if the parties cannot agree on an arbitrator from that list, each party shall return its list to the AAA within 10 days, striking up to two candidates, and ranking the remaining candidates in order of preference; (c) the AAA shall appoint as arbitrator the candidate with the highest aggregate ranking; and (d) if for any reason the appointment cannot be made according to this procedure, the AAA may exercise its discretion in appointing the arbitrator. Upon filing of the arbitration demand, we will pay or reimburse all filing, administration and arbitrator fees. An arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief and attorneys' fees. In addition, for claims under $75,000 as to which you provided notice and negotiated in good faith as required above before initiating arbitration, if the arbitrator finds that you are the prevailing party in the arbitration, you will be entitled to recover reasonable attorneys' fees and costs. Except for claims determined to be frivolous, T-Mobile agrees not to seek attorneys' fees in arbitration even if permitted under applicable law.

(Ex. 7 at 3.)

In short, Plaintiff entered into no less than four different agreements to arbitrate disputes with T-Mobile and its agents, dealers, or authorized retailers, of which TCC Wireless is one: the 10/27/2023 Receipt, the 11/09/2024 Receipt, the EIP Agreement, and the Trade In Agreement.

There is no evidence or allegation that Plaintiff opted out of any of the arbitration provisions she agreed to with T-Mobile and its agents. (*See* Tarasievich Decl. ¶ 8.)

---

is there any reason to believe) that she is a "Covered Buyer" for purposes of the EIP and its arbitration provisions.

## II. Plaintiff's claims

On May 13, 2025, Plaintiff filed this lawsuit against TCC Wireless and an unnamed insurance provider, alleging seven different clauses of action. Plaintiff generally alleges that when she entered a TCC Wireless retail store on November 9, 2024, she was assisted by a TCC Wireless employee named Farlane Nicholas Bedford. (Compl. ¶ 25–29.) After presenting Plaintiff with different options to upgrade her phone, Plaintiff selected the iPhone 16. (*Id.* ¶ 36.) According to Plaintiff, the employee transferred her data from her old iPhone 12 to a new iPhone 16. (*Id.* ¶¶ 37–50.)

At that point, the employee went rogue and committed criminal actions—for whom TCC Wireless is not liable whatsoever[4]—when he lied about deleting her personal information, and then stole her personal information. (*See* Compl. ¶¶ 57, 60.) Plaintiff alleges that the rogue employee, Bedford, gained access to "multiple sexually explicit pictures and videos of the Plaintiff located in a hidden folder." (*See id.* ¶¶ 61–66).

Plaintiff purports to allege seven federal and state law claims against TCC Wireless (*See* Compl. ¶¶ 71–106.) However, for the reasons explained below, Plaintiff cannot assert any of her claims in this Court. Rather, Plaintiff has executed a series of arbitration provisions that should compel the Court to grant TCC Wireless's motion and order that Plaintiff proceed with her claims exclusively in arbitration.

Accordingly, Plaintiff must arbitrate each and every one of her claims against TCC Wireless and the Complaint should be dismissed.

---

[4] Criminal sexual conduct is usually considered outside the scope of one's employment as a matter of law. *Martin v. Milwaukee Cty.*, 904 F.3d 544, 555 (7th Cir. 2018).

## LEGAL STANDARD

TCC Wireless seeks to compel arbitration pursuant to parties' valid written agreement to arbitrate claims and the Federal Arbitration Association ("FAA"). Through the FAA, 9 U.S.C. § 1 *et seq.*, Congress has declared a national policy favoring alternative dispute resolution agreements. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

"The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). But courts have analogized the standard to that required of a party opposing summary judgment under Federal Rule of Civil Procedure 56(e): "the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists."[5] *Id.* at 735 (collecting cases); *see also Theobald Farms, Inc. v. Centr. States Enters., LLC*, No. 1:21 CV 409 HAB-SLC, 2025 WL 1168888, *2 (N.D. Ind. Apr. 21, 2025) (citing *Tinder* for same). "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder*, 305 F.3d at 735 (citing *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)); *see also Ward v. Charter Comms.*, 734 F. Supp. 3d 843, 847 (E.D. Wis. 2024). "The

---

[5] The Seventh Circuit recently held that "dismissal under Rule 12(b)(3) is "no longer a permissible means of enforcing arbitration agreements" after the Supreme Court's ruling in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013)." *Garage Door Sys., LLC v. Blue Giant Equip. Corp.*, 134 F.4th 953, 957 (7th Cir. 2025) (parallel citations omitted). For this reason, TCC Wireless does not ground this motion in Rule 12(b)(3). *See also Theobald Farms*, 2025 WL 1168888, *1.

resisting party must do this by identifying specific evidence in the record demonstrating a material factual dispute for trial." *Ward*, 734 F. Supp. 3d at 847 (cleaned up). The party opposing arbitration bears the burden of proving that the claims at issue are not referable to arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000); *Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772, 775 (N.D. Ill. 2002).

## ARGUMENT

### I. Federal law and policy favors arbitration.

"Congress enacted Chapter 1 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16, in 1925 to 'ensure that private arbitration agreements are enforced according to their terms.'" *Garage Door Sys.*, 134 F.4th at 957 (quoting *Concepcion*, 563 U.S. at 344 (cleaned up)). By its terms, section 2 of the FAA states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730–31 (7th Cir. 2005) (quoting *Moses H. Cone*, 460 U.S. at 24). "As a general rule, courts must 'rigorously enforce' arbitration agreements according to their terms." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773–74 (7th Cir. 2014) (quoting *Am. Express v. Italian Colors Restaurant*, 570 U.S. 220, 228 (2013)). When conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see* 9 U.S.C. § 4 ("[U]pon being satisfied that the

making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

To prevail on a motion to compel arbitration, a party must show that: (1) there is a valid, written agreement to arbitrate; (2) the dispute is within the scope of the agreement; and (3) there is a refusal to arbitrate. *E.g.*, *Zurich Am. Ins. Co. v. Watts Indus. Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "[F]ederal policy favors arbitration [and] once an enforceable arbitration contract is shown to exist, questions as to the scope of the arbitrable issues should be resolved in favor of arbitration." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citing *Moses H.*, 460 U.S. at 24–25); *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (stating that the FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution"). "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 175 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Or, put even more succinctly by the Seventh Circuit:

> the party seeking arbitration is entitled to the benefit of the doubt. Where the arbitration clause is broad, [courts] presume arbitrability of disputes. *AT&T Techs., Inc. v. Communc'ns Workers of America*, 475 U.S. 643, 649 (1986). And where any ambiguity as to the scope of the clause exists, [courts] will construe it in favor of the party seeking arbitration. *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

*Int'l Bhd. of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014).

## II. The FAA applies here and operates to compel arbitration.

As stated, a written arbitration provision is a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable . . . ." 9 U.S.C. § 2. The FAA defines "commerce" as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia . . . ." *Id.* § 1. The Supreme Court has

> interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix Cos.*[ *v. Dobson*, 513 U.S. 265, 273–74 (1995)]. Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," *Perry v. Thomas*, 482 U.S. 483, 490 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"—that is, "within the flow of interstate commerce," *Allied-Bruce Terminix Cos.*, *supra* at 273 (internal quotation marks, citation, and emphasis omitted).

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The Court has also held that "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Id.* at 56–57 (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)).

The transaction here satisfies the interstate commerce requirement. "[N]umerous courts have found that wireless telephone and data services involve commerce for purposes of the FAA." *Edwards v. Verizon*, No. CV 14-09394 BRO (JEMx), 2015 WL 13654015, *2 (C.D. Cal. Jan. 26, 2015) (collecting cases). For example, in *Barahona v. T-Mobile USA, Inc.*, the court enforced an arbitration agreement stating in part that "the parties also agree that the agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply." No. C08-1631-RSM, 2024 WL 3705594, *1 (W.D. Wash. Jul. 25, 2024) (cleaned up). The Court stated that

"[t]he FAA applies to this action both because the transactions at issue involve interstate and foreign commerce, and because the parties' agreement expressly provides for its application."

**III.    A valid arbitration agreement exists that governs this dispute.**

The parties' agreement to arbitrate is valid and binding. The FAA, which preempts state law, plainly states that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Moreover, the Supreme Court has repeatedly held that the FAA requires a court to "give effect to the contractual rights and expectations of the parties," and agreements to arbitrate must be enforced according to their terms. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 682 (2010) (citation omitted). The decision to submit disputes to arbitration is a consensual one, and therefore, is a matter of contract. *AT&T Techs. Inc. v. Comms. Workers of Am.*, 475 U.S 643, 648–69 (1986).

Plaintiff contractually agreed to arbitrate any disputes with TCC Wireless. Plaintiff agreed to four separate agreements, each of which contained alternative dispute resolution provisions requiring Plaintiff to arbitrate all disputes with T-Mobile and its agents, dealers, and authorized retailers, among others. (*See, e.g.,* Compl. ¶¶ 15–17.) The obligation is clearly printed on the forms that she signed, notifying her of this obligation. She had the opportunity to rescind this agreement within 30 days, and she did not exercise this right. Plaintiff simply has no excuse for not submitting this matter to arbitration as she contractually agreed to do. *See, e.g., Hughes Masonry Co. Inc. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 838–39 (7th Cir. 1981).

**IV.    Plaintiff's claims fall within the scope of the arbitration agreement.**

Once a court determines there is an agreement between the parties to arbitrate, it must determine whether the dispute falls within the scope of the arbitration agreement. *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). The broad language in the arbitration clause of the Agreements is more than sufficient to encompass the claims alleged in the Complaint.

Plaintiff asserts seven different causes of action, all of which purportedly arise out of her transaction whereby she upgraded her iPhone. The Agreements contain detailed arbitration provisions that require Plaintiff to arbitrate "*any* dispute" between her and T-Mobile (and its agents). *Gore v. Alltel Comms., LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (finding that the phrase "'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se"). Further, this dispute is alleged to have arisen out of or relating to the services performed by TCC Wireless.

Plaintiff's claims unequivocally fall within the scope of the arbitration provision and, as a result, the FAA requires this Court to compel arbitration.

## CONCLUSION

Plaintiff agreed to submit any claims she might have regarding her business relationship with TCC Wireless to binding arbitration and cannot not be allowed to circumvent her contractual obligations by filing a complaint in this Court. For the reasons discuss above the Court should grant this motion and enter an order dismissing Plaintiff's Complaint or, alternatively, staying this matter and ordering the case to arbitration.

Dated: July 3, 2025

Respectfully submitted,

TCC WIRELESS LLC

*/s/ Benjamin S. Morrell*
Benjamin S. Morrell (IL ARDC No. 6341896)

Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel.: (312) 527-4000
Fax: (312) 527-4011
bmorrell@taftlaw.com

*Counsel for Defendant*

13
Case 1:25-cv-00686-BBC    Filed 07/03/25    Page 13 of 13    Document 10-1