UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

BRIUNA HARPER,

    Plaintiff,

v.

TCC WIRELESS LLC

    and

XYZ Insurance Company,

    Defendants.

CASE NO.: 25-cv-686

## PLAINTIFF'S RESPONSE TO DEFENDANT TCC WIRELESS LLC'S MOTION TO COMPEL ARBITRATION

TCC Wireless asks this Court to compel arbitration by referring to the fine print hidden deep within the terms and conditions of the Plaintiff's agreement with T-Mobile. Unfortunately, the fine print only compels arbitration in situations where the Plaintiff sues T-Mobile. As such, TCC Wireless LLC's Motion is without merit and should be denied.

### Background

Defendant, TCC Wireless, LLC ("TCC Wireless"), contends the Plaintiff is bound contractually to submit to binding arbitration in this case. The Defendant argues that, prior to its actions and omissions that form the basis for the Plaintiff's claims, the Plaintiff consented on four separate occasions to be bound by T-Mobile's Terms and Conditions ("T&Cs"). [Dkt. 10-1, p. 13.] It is TCC Wireless's position that the T&Cs constitute a binding arbitration agreement between

the Defendant and the Plaintiff and that the scope of the agreement applies to all seven of the Plaintiff's claims.

The arbitration agreements tell a different story. The plain language of the agreements provides that arbitration is only required in circumstances where the Plaintiff makes claims against T-Mobile, its controlled subsidiaries, assignees, and agents. [Dkt.10-3, p.2, p. 5.] The scope of the two arbitration agreements cited by the Defendant do not apply to claims brought exclusively against TCC Wireless for its conduct and omissions. TCC has failed to establish that an arbitration agreement exists between the Defendant and the Plaintiff. Therefore, for the purpose of deciding this Motion, the fact that the Plaintiff consented to the T&Cs is irrelevant. Without the existence of an agreement to arbitrate with the Defendant, the Motion must be denied.

## Legal Standard

Under the Federal Arbitration Act, arbitration agreements are treated as contracts and the court will "compel arbitration under the Federal Arbitration Act" if there is 'an enforceable written agreement to arbitrate.'" *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)). Courts apply state-law principles governing the formation of contracts to determine whether parties have agreed to arbitrate a matter. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[A] 'party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *A.D.*, 885 F.3d at 1060 (citing *United Steelworkers of American v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)).

The Supreme Court has held that 'traditional principles of state law' govern whether an arbitration agreement can be enforced by or against a non-party. *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624,

2

631 (2009)). The court explained that "traditional principles of state law" govern whether a contract, including an arbitration agreement, is enforceable by or against a non-party. *Arthur Andersen*, 556 U.S. at 631 (quotations and citation omitted). The Court has identified contract theories of assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary, waiver, and estoppel among those state law principles that could govern who may enforce the agreement. *Id*. at 631. This Circuit has also included agency in the list of state law doctrines governing when a non-signatory may be bound to arbitration. *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005); *Scheurer*, 863 F.3d at 752-53.

## Argument

A. <u>The T-Mobile Arbitration Clause Does Not Apply to TCC Wireless, LLC</u>.

In their Motion, Defendants cite language from two separate T&C's they contend bind the Plaintiff to submit to mandatory arbitration to resolve her claims. [Dkt. 10-1]. The first quotes the T-Mobile website with the operative language:

> "By accepting these T&Cs, *you are agreeing to resolve any dispute with us* through individual binding arbitration or small claims dispute procedures…YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS, IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICE OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT…this includes any claims against other parties relating to services, products or devices provided or billed to you (such as our suppliers, dealers, authorized retailers or third-party vendors) *whenever you also assert claims against us in the same proceeding*." [Dkt. 10-1, p.3.] (emphasis added).

The second states:

> Dispute Resolution and Arbitration…This section describes *how any disputes between you and T-Mobile will be resolved*. WE AND YOU EACH AGREE THAT, EXCEPT AS PROVIDED BELOW,

3

> ANY AND ALL CLAIMS OR DIPSUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, OR DEVICES OR PRODUCTS, INCLUDING ANY BULLING DIPUSTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT. This includes any claims against other parties relating to services or equipment provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) *whenever you also assert claims against us in the same proceeding*. (*Id.* at 5.) (emphasis added).

The language of each T&C quoted above states that the arbitration clause pertains to "any disputes between you (the customer) and *T-Mobile*." TCC Wireless and T-Mobile are separate, distinct business entities. TCC Wireless was incorporated in the state of Delaware in 2014. The principal office is in Illinois and is an authorized distributor for T-Mobile. [Dkt. 11-1.] In comparison, T-Mobile was incorporated in the state of Delaware in 1999. It has a principal office in Washington and provides mobile phones and mobile service plans to customers around the world. (Affidavit of Andrew J. Hysell ¶2, Ex. 1.) TCC Wireless acknowledges its distinctness from T-Mobile, self-identifying as an "authorized distributor of T-Mobile products and services and operates retail stores." [Dkt. 10-1, p.2.]

Language in the T&Cs provide for an argument for the inclusion of claims third-party such as T-Mobile "suppliers, dealers, authorized retailers, or third-party vendors." However, this inclusion occurs only "whenever you also assert claims against "us" in the same proceeding." The contract defines "us" as T-Mobile its controlled subsidiaries, assignees, and agents. [Dkt. 10-3, p.2.] The Plaintiff has not asserted any claims against T-Mobile in her lawsuit. Agency and the theory of alter-ego are inapplicable to TCC Wireless in this case. TCC Wireless and T-Mobile are two distinct corporate entities whose relationship is simply based upon a business contract. A corporate relationship is generally not enough to bind a non-signatory to an arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 688 (7th Cir. 2005). In that case the court ruled

that a wholly owned subsidiary was not bound by an arbitration agreement signed by the parent company.  As it relates to this case, TCC Wireless is an authorized distributor for T-Mobile and does not fit within the definition of "us" in the T&Cs.  As such, TCC Wireless has no right to demand arbitration under the T-Mobile T&Cs.

TCC Wireless described its relationship with T-Mobile as follows: "TCC Wireless is an authorized distributor of T-Mobile products and services, and operates retail stores selling cellular phones, accessories, and cellular phone plans, among other things, for T-Mobile." [Dkt. 11-1, p. 2.] TCC Wireless then claims it is an agent of T-Mobile. [Dkt. 10-1, pp.5, 11.]  However, the T-Mobile arbitration agreement does not include TCC Wireless in its definition of "us".  It is a basic tenet of contract law that the court is to interpret the contract as it is written. In this case, T-Mobile specifically wrote that suppliers, dealers, authorized retailers and third-party vendors are only entitled to arbitration in situations where claims are brought against T-Mobile in the same proceeding.  The Plaintiff filed no claims against T-Mobile in this case.

All seven of the Plaintiff's claims focus exclusively on the acts and omissions of TCC Wireless and its employees. Therefore, the condition precedent required to bind the Plaintiff to arbitration with TCC Wireless does not exist. The plain language of the T&Cs cannot be read to bind the Plaintiff to mandatory arbitration in this instance because her claims are exclusively with TCC Wireless. Under the general principles of state contract law, parties are not obligated to perform under terms to which they never agreed. T-Mobile's mandatory arbitration clause cannot be arbitrarily applied to claims involving another party without some basis for doing so.

## Conclusion

The plain language of the arbitration clause does not apply to the Plaintiff's claims. She sued TCC Wireless, not T-Mobile. TCC Wireless's Motion should therefore be denied.

Dated the 25th day of July, 2025.

                                                        LAWTONCATES S.C.

                                        By: *Electronically signed by Andrew J. Hysell*
                                                    Andrew J. Hysell, State Bar No.: 1053807
                                                    Dixon R. Gahnz, State Bar No.: 1024367
                                                    Attorneys for Plaintiff

P.O. Box 2965
1050 E. Washington Ave. Ste. 330
Madison, WI 53703
P: (608) 282-6200
F: (608) 975-2662
ahysell@lawtoncates.com
dgahnz@lawtoncates.com