## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN

**BRIUNA HARPER,**

       Plaintiff,

v.                                         CASE NO.:25-CV-686

**TCC WIRELESS LLC**
and
**XYZ Insurance Company,**

       Defendants.

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE SECOND DECLARATION OF ERIC TARASIEVICH

### INTRODUCTION

TCC Wireless LLC asks this Court to compel arbitration based on an evolving series of arguments over several filings. In its Memorandum in Support of Defendant TCC Wireless LLC's Motion to Compel Arbitration ("Motion"), Defendant argues exclusively the plain language of the T-Mobile's arbitration clause acts as a binding agreement between the Plaintiff and her claims against Defendant. In addition to responding to Plaintiff's rebuttal of its plain language argument, Defendant introduces new legal theories from two different states in its subsequent Reply in Support of Motion to Compel Arbitration ("Reply"). In support of these new arguments, it submits to the Court a heavily redacted contract attached to the Reply. In fact, Defendant completely redacts the language under the Arbitration heading of the contract. Defendant's arguments are without merit, and the Second Declaration of Eric Tarasievich should be stricken.

I. **DEFENDANT'S SECOND AFFIDAVIT SHOULD HAVE BEEN INCLUDED IN ITS MOTION**

Defendant's Reply advances new arguments based on contract law theories from both Texas and Wisconsin. (Dkt. 14, pp.5-15). Defendant failed to argue these theories to support their original Motion. In its reply, Plaintiff did not introduce any arguments relating to state law theories. Defendant's failure to raise the issue of estoppel in its Motion is justification for this Court to prohibit its inclusion in a reply. *See Blankenship v. Am. Phx., No. 17-cv-847-jdp, 2019 U.S. Dist. LEXIS 98249, at \*3 (W.D. Wis. June 12, 2019), "A party cannot raise new issues in a reply brief," citing Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009). Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009)* "…[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited." Therefore, the Second Declaration of Eric Tarasievich should be stricken.

A. <u>**The Redactions in the Retailer Services Agreement Are so Pervasive and Material That the Court Should Not Consider the Agreement.**</u>

To buttress the legal arguments articulated in its Reply, Defendant seeks to introduce a Retail Service Agreement ("RSA") between T-Mobile and TCC Wireless (Dkt. 14-1). Defendant does not address the fact that it provided the Court with a heavily redacted document other than stating parenthetically "excerpted and redacted" (Dkt. 14, p.7). The redactions are pervasive and material to the issues at hand. For instance, under Sec. 4.1, the agreement makes it clear that Defendant is an independent contractor, but then redacts the next two subsections of the agreement. (Dkt. 14-1, p. 5). Additionally, Defendant fails to provide Exhibit B, which purports to show areas where the contract applies. (*Id.*).

The RSA states that Defendant is an independent contractor and is not entitled to enforce the arbitration clause against the Plaintiff. The plain language of the arbitration clause compels that conclusion and the RSA makes it clear that Defendant is not so closely associated with T-Mobile as to fall within the arbitration clause.

Most importantly, TCC redacts the entire section labeled Subscriber Complaints and Actions Involving Provider. (*Id.* at p. 12). It is hard to imagine a more salient section of the contract. Plaintiff is a subscriber making a complaint against the provider and Defendant blacks out the entire section of the agreement. The fact that this entire section is redacted should give rise to an inference that the arbitration agreement between T-Mobile and the Plaintiff does not extend to Defendant.

Defendant completely omits pages 22-23 of the contract. (Dkt. 14-2, ¶ 3). There is no explanation provided for the omission. Next, pages 24-26 are completely redacted. (Dkt. 14-1., pp.24-26). Defendant redacts the entirety of the Arbitration clause of the agreement. (*Id.* at p.26) After that, Defendant omits pages 27-33 of the agreement. (Dkt. 14-2, ¶ 3). No citation is necessary to establish the impropriety of cherry-picking parts of an agreement you want a court to consider while blacking out and omitting those parts you wish not to be considered.

## II.     DEFENDANT'S REPLY BRIEF IMPROPERLY RAISES NEW ISSUES

### A.     <u>Defendant's Motion to Compel Arbitration Relied Solely on the Plain Language of the Contract.</u>

In its motion, Defendant argued that a "valid arbitration agreement exists that governs this dispute." (Dkt. 10-1, p. 11). Defendant's erroneous conclusion is predicated on the plain language of four different T-Mobile arbitration clauses "agreed to" by Plaintiff. (*Id.*) In the words of Defendant, "[t]he obligation is clearly printed on the forms that she signed, notifying

3

her of this obligation." (*Id.*) The plain language argument was the only argument raised by Defendant in its original Motion. Notably, Defendant's Motion raised no contract law theories to support the enforcement of an arbitration agreement for the benefit of a non-signing party.

**B. <u>Plaintiff's Response Focused Exclusively on Rebutting Defendant's Plain Language Argument and Defendant's Response and its Reliance on an Unpublished, Overruled Illinois District Court Case for Rebuttal is Unpersuasive.</u>**

Plaintiff responded to no issues other than those raised in Defendant's Motion. Plaintiff's argument focused solely on the analysis of the express language of the T-Mobile arbitration clause as applied to the facts of her case. (Dkt. 12, pp. 3-5). Plaintiff argued that Defendant is a separate entity from T-Mobile and her claims stem from Defendant's acts and omissions alone. (*Id*. at pp.4-5). As such, the express language of the T-Mobile arbitration clause cannot be asserted by Defendant as it does not involve T-Mobile. (*Id.* at 5).

Defendant's Reply allocates only the first three of its sixteen pages to its original argument raised in its Motion (Dkt. 14, pp. 2-4). In doing so, Defendant cites a single, unpublished decision from a sister court.[1] In *Warciak v. Subway Restaurants, Inc.,* No. 16 CV 8694, 2017 WL 5895159 (N.D. Ill. April 7, 2017), the court considered whether a T-Mobile arbitration clause applied to a dispute between a T-Mobile customer and a non-signatory party, the Subway Corporation. The district court held that the Plaintiff was required to arbitrate his claims against Subway, stating that the T-Mobile arbitration clause was written in such a way to include his claims. (*Id. at *6*).

First, it is important to note that this Court has stated that district court cases lack precedential authority. *See Pagan v. Integrity Solution Servs.,* 42 F. Supp. 3d 932, 933 (E.D.

---

[1] Defendant fails to state that the *Warciak* case is an unpublished opinion in its Response.

Wis. 2014). Furthermore, the *Warciak* case was overruled by the Seventh Circuit in *Warciak v. Subway Rests., Inc.*, 880 F.3d 870 (7th Cir. 2018), a published decision. While not addressing explicitly the language of the T-Mobile clause, the ruling supports the conclusion that the Court viewed the T-Mobile clause as not, on its face, binding plaintiff Warciak to arbitration with Subway. In *Warciak,* the Court did not address the district court's analysis of the language of the T-Mobile contract, but instead ruled the T-Mobile arbitration agreement unenforceable under a theory of promissory estoppel. (*880 F. 3d at 873*). Had the Court believed that the T-Mobile arbitration clause applied to the arbitration of Subway's claims, there would be no need for a legal conclusion on the issue of estoppel since a binding agreement would already exist. An argument of estoppel is a legal theory advanced in the absence of an explicit agreement. *See Taylor Elec. Co. v. Blow, 92 Wis. 2d 904 (Ct. App. 1979) stating that "estoppel deals with promises which have no contractual basis…" See also, Janke Construction Company, Inc. v. Vulcan Materials Co., 386 F. Supp. 687, 697 (D.C. Wis. 1974), aff'd., 527 F.2d 772, 777 (7th Cir. 1976).* It can be logically inferred that the Court did not view the T-Mobile arbitration clause applicable to a non-signatory third party being sued separately. (*880 F. 3d at 872*). "*Generally, a court cannot compel a party to arbitrate a dispute unless that party has agreed to do so.*" Hence, Defendant's reliance on an unpublished, overruled district court case from Illinois is of little consequence in this case now before the Court.

### C. <u>Should the Court Choose to Decide the Issue, the Facts Presented by Defendant Do Not Meet the Requirements Necessary to Invoke Promissory Estoppel.</u>

Because Defendant raised the issue of promissory estoppel in its Reply, Plaintiff is compelled to respond. Defendant, as a non-signatory, seeks to invoke the T-Mobile arbitration clause against the Plaintiff and conducts two analyses of promissory estoppel using principles of

5

Texas and Wisconsin contract law (Dkt. 14, pp. 6, 13). In this case, the appropriate choice-of-law is Wisconsin's. Defendant is a non-signatory to the T-Mobile arbitration clause and therefore no contract with any forum selection exists between the parties. *See Mayer v. Soik, 2021 Wisc. App. LEXIS 363, \*10-11, 2022 WI App,7, 400 Wis. 2d 542. ("where a non-signatory seeks to compel arbitration with a signatory, or vice versa, the court's inquiry is, essentially, whether there is an implicit or de facto arbitration agreement between the two. It would erode a party's fundamental right to access the courts if the court presumed arbitrability at the outset.").* Any forum selection clause present in the T-Mobile clause is therefore irrelevant. Instead, the choice of law is determined by where the Court resides when "sitting in diversity" which of course is Wisconsin. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 108, 142 S. Ct. 1502, 1505, 212 L.Ed.2d 451, 455 (2022). Wisconsin choice-of-law applies the significant relationship approach to the transaction and considers where the agreement was negotiated and performed as usually determinative of the applicable state law. *Haines v. Mid-Century Ins. Co*., 47 Wis. 2d 442, 446-47, 177 N.W.2d 328, 330 (1970). According to Defendant, Plaintiff signed the two agreements and received her phones while present in Sheboygan, Wisconsin (Dkt. 10-1, pp.2-4). Wisconsin law is therefore the appropriate law to use to consider the issue of promissory estoppel.

In their Wisconsin analysis, Defendants reference but do not discuss, a Western District case and its subsequent appeal which considered a claim involving an application agreement featuring an arbitration clause signed by both an employee and an employment agency. *Scheurer v. Fromm Family Foods LLC*, 202 F. Supp. 3d 1040, 2016 U.S. Dist. LEXIS 109773 (W.D. Wis. 2016). The clause's language required the employee "to arbitrate any disputes with her 'Employer…arising out of or relating to [her] employment or the termination of [her] employment.' (*Id.* at 1042). In *Scheurer,* the plaintiff employee went to work at a grocer where

6

she complained about harassment, was fired and subsequently filed a federal sex harassment and retaliation claim against the same grocer. The grocer, a non-signatory to the arbitration clause contained in the application, sought to enforce arbitration. (*Id.* at 1042-3).

The *Scheurer* court found that estoppel was not available under federal or state law to support the enforcement of the subject arbitration agreement. (*Id*. at 1044). Of significant import, the Seventh Circuit affirmed the *Scheurer* decision. *Scheurer v. Fromm Family Foods LLC,* 863 F.3d 748. 2017 U.S. App. LEXIS 12743 (7th Cir. 2017). The *Scheurer* court noted that the non-signatory employer had not demonstrated any reasonable reliance on the employee's decision to sign her application agreement with the employment agency. (*202 F. Sup.* at 1042). The court in *Scheurer* noted that, even if the employer's reliance could be demonstrated, such reliance was unreasonable because the employer knew it was not a party to the agreement. (*Id.*)

The *Scheurer* facts support a finding that estoppel cannot be invoked by Defendant in this case based upon any reasonable reliance to Defendant's detriment. T-Mobile clearly defines the parties to which its arbitration clause applies—namely itself. Under the T&C's, it defines "us" as to exclude Defendant. (Dkt. 12, p.5). The RSA submitted by Defendant defines Defendant as an independent contractor, not an agent or subsidiary (Dkt. 14-1, p.5). The record demonstrates that T-Mobile and Defendant were aware that they are two separate, distinct entities and any reliance Defendant placed in the arbitration clause would be unreasonable and unfounded.

Defendant cites *Hughes Masonry Co. v. Greater Clark Cty. Scho. Bldg. Corp., 659 F. 2d 836 (7th Cir. 1981)* where the Seventh Circuit applied an arbitration clause to a non-signatory subcontractor. In their Reply, Defendants quote *Hughes* in so far as saying the "signatory-plaintiff 'is estopped from denying [nonsignatory-defendant] the benefit of the arbitration clause with regard to the claims that are as intimately founded in and intertwined with the underlying obligations as [signatory's] claim appear to be here.'" (Dkt. 14, p. 14). Defendant reasons that

7

Plaintiff's claims against Defendant "are intertwined with her own allegations and claims" against T-Mobile such as a failure "to safeguard private/personal information, including pursuant to T-Mobile's policies." (*Id.*).

This Court considered a case where a non-signatory party sought to invoke *Hughes* to enforce an arbitration agreement against a mobile phone customer. It concluded that the principle of equity underlying promissory estoppel was not implicated even where a signatory to an arbitration clause was simultaneously pursuing "a claim that is interdependent with [an] arbitrable claim." *Pagan v. Integrity Solutions Servs., 42 F. supp. 3d 932, 936, 2014 U.S. Dist. LEXIS 124796 (E.D. Wis. 2014).* In *Pagan,* a debt collector, Integrity, sought to collect an unpaid bill owed by the plaintiff to AT&T. (*42 F. supp. 3d* at 933). When plaintiff filed suit against Integrity and AT&T for violations of debt collection statutes, the non-signatory debt collector sought to enforce an arbitration clause contained within the AT&T 'wireless customer agreement' signed by the plaintiff *(Id.*). The Court refused to grant enforcement of arbitration for Integrity, the non-signatory party, against the plaintiff.

The *Pagan* Court found that the circumstances before it were "nothing like" those considered in *Hughes.* (*Id.* at 935). The Court observed that the plaintiff was "not trying to hold Integrity to the terms of the wireless agreement she entered into with the AT&T or otherwise enforce that agreement" but instead "alleges that Integrity violated state and federal statutes." (*Id.*). As such, it could not be "considered inequitable for a signatory to an arbitration agreement to sue a nonsignatory to that agreement" because "the signatory would not be taking unfair advantage of the nonsignatory or otherwise be engaging in inequitable conduct." (*Id.* at 936).

*Scheurer* likewise considered the analysis presented by the Seventh Circuit in *Hughes* as well and rejected its application to force a signatory to arbitrate with a non-signatory. The court acknowledged that the 'Seventh Circuit holds that a plaintiff 'cannot rely on the contract when it

8

works to its advantage, and repudiate it when it works to its disadvantage.' *Scheurer at 1044 quoting Hughes Masonry Co.* at 839. However, *Scheurer* distinguished the facts before it that, while the employment application "could inform this inquiry" associated with the plaintiff's sexual harassment claims, the "agreement would not definitely resolve the issue." *(Scheurer* at 1045). The court therefore concluded that the defendant's potential liability for plaintiff employee's claims would not turn "on whether it breached a provision of the application agreement" meaning the claims were not "inextricably intertwined." (*Id.*).

As in *Scheurer*, the Plaintiff's claims in this case do not turn on the application of the T-Mobile user agreements. Defendant cites paragraphs in Plaintiff's complaint that reference T-Mobile (Dkt. 14, p.14). But in every instance, these references "inform this inquiry" rather than assert any contractual obligation owed by T-Mobile to the Plaintiff. For example, Plaintiff cites past examples of widely reported privacy violations at T-Mobile stores as evidence of constructive knowledge and awareness to support her claim of Defendant's duty under the common law to hire and manage its employees with reasonable care. (Dkt. 1, ¶¶1-5, 96-98). Nowhere in any of Plaintiff's seven claims - three statutory violations and four common law claims - is there any reference to the T-Mobile contract. (Dkt. 1, pp.8-11). None of the Plaintiff's claims turn on the breach of any T-Mobile contract provision but instead relate to the acts and omissions strictly and exclusively of Defendant and agents of Defendant.

## <u>CONCLUSION</u>

For the reasons stated in her response to the motion to strike and herein, plaintiff respectfully requests that the second affidavit of Eric Tarasievich be stricken. Alternatively, if the court considers the affidavit, the plaintiff respectfully requests that the motion to compel arbitration be denied.

9

Dated: This 9th day of September, 2025.    **LawtonCates, S.C.**
Attorneys for Plaintiff, Briuna Harper
*Electronically Signed By*:

*/s/ Andrew J. Hysell*
Attorney Andrew J. Hysell, State Bar No.: 1053807
Attorney Dixon R. Gahnz, State Bar No.: 1024367

P.O. Box 2965
1050 E. Washington Ave. Ste. 330
Madison, WI 53703
P: (608) 282-6200
F: (608) 975-2662
ahysell@lawtoncates.com
dgahnz@lawtoncates.com

10