UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

BRIUNA HARPER,

    Plaintiff,

v.

TCC WIRELESS LLC

    and

XYZ Insurance Company,

    Defendants.

CASE NO.: 25-cv-686

**PLAINTIFF'S SUR-REPLY TO DEFENDANT TCC WIRELESS LLC'S MOTION TO COMPEL ARBITRATION**

    Defendant TCC Wireless's ("Defendant) *Memorandum in Support of Defendant TCC Wireless LCC's Motion to Compel Arbitration* argued exclusively that Plaintiff Briuna Harper's ("Plaintiff") claims against them must be arbitrated due to the express language of one or more T-Mobile arbitration clauses signed by the Plaintiff. [Dkt. 10-1]. In their *Reply in Support of Motion to Compel Arbitration*, Defendant made a new argument that, even as nonparties to the agreement, common law theories of estoppel allowed them to invoke T-Mobile's arbitration clause. [Dkt. 14, pp. 5-15]. Plaintiff responds now to Defendant's new arguments in their Sur-Reply.

        **I.**    <u>**Wisconsin Law Should be Applied to Defendant's Motion.**</u>

    Defendant, as a non-signatory, seeks to invoke the T-Mobile arbitration clause against the Plaintiff. To do so, Defendant conducts two separate legal analysis of promissory estoppel under

Texas and Wisconsin state law [Dkt. 14, pp.6, 13]. Defendant argues Texas law should apply, citing a clause contained within the T-Mobile agreements which deems the Texas billing address on the T-Mobile account as determinative. [Dkt. 14, pp.5-6]. However, such an argument incorrectly presupposes the existence of a binding arbitration agreement in the first place.

It is undisputed that Defendant is a non-signatory to the T-Mobile agreements. Defendant makes no claim that Plaintiff ever signed an arbitration agreement with Defendant, but instead only that she signed one or more agreements with T-Mobile. [Dkt 10-1, pp. 2-5]. Defendant is not T-Mobile. In their Amended Disclosure Statement, Defendant makes that clear, stating that they are a "wholly" owned limited liability company legally distinct from T-Mobile [Dkt. 19, p.2].

As non-signatories, the existence of an arbitration agreement cannot be presumed. A Wisconsin court has found the provisions of an arbitration agreement inapplicable in the context of a motion to compel arbitration until such time that it is determined that arbitrability exists between non-signatories.[1] See *Mayer v. Soik,* 2021 Wisc. App. LEXIS 363, *10-11, 2022 WI App,7, 400 Wis. 2d 542. *("where a non-signatory seeks to compel arbitration with a signatory, or vice versa, the court's inquiry is, essentially, whether there is an implicit or de facto arbitration agreement between the two. It would erode a party's fundamental right to access the courts if the court presumed arbitrability at the outset.").* Texas courts are aligned with Wisconsin is so far that the threshold issue of the existence of a binding arbitration is a "gateway" issue before the substantive provisions of the clause can be considered. *In re Rubiola*, 334 S.W.3d 220, 224, 54 Tex. Sup. Ct. J. 654 (2011). See also *Jody James Farms, JV v. Altman Grp., Inc.,* 547 S.W.3d 624, 633, 61 Tex. Sup. Ct. J. 1112 (2018) ("*...[T]he moving party must first establish the existence of

---

[1] *Mayer v. Soik* is an unpublished decision. Pursuant to Wis. Stat. § 809.23(3), unpublished decisions decided after 2009 and authored by a single judge can be cited for persuasive value. This Court cited the *Mayer v. Soik* decision relating to enforcing an arbitration agreement involving a non-signatory. See *Dist. Council No. 7 v. Pepper Constr. Co.,* No. 20-cv-912-pp, 2023 U.S. Dist. LEXIS 57891, at *65 (E.D. Wis. Mar. 30, 2023).

2

*a valid and enforceable arbitration agreement. Second, the claims at issue must fall within the arbitration agreement's scope. Whether a non-signatory may enforce an arbitration agreement's terms is a question within the first element.*"). Since the first issue under consideration is the gateway matter of whether a binding arbitration agreement exists, a choice-of-law provision embedded in such an agreement is irrelevant to determining applicable state law.

Without any contractually binding agreement, the choice of law is determined by where the Court resides when "sitting in diversity" which is Wisconsin. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115, 142 S. Ct. 1502, 1505, 212 L.Ed.2d 451, 455 (2022). Wisconsin choice-of-law applies the significant relationship approach to the transaction and considers where the agreement was negotiated and performed as usually determinative of the applicable state law. *Haines v. Mid-Century Ins. Co*., 47 Wis. 2d 442, 446-47, 177 N.W.2d 328, 330 (1970). According to Defendant, Plaintiff signed multiple agreements and received her phones while residing in Sheboygan, Wisconsin [Dkt. 10-1, pp.2-5]. Wisconsin law is therefore the requisite law to use to apply to the issue of promissory estoppel in this case.

## II. Under Wisconsin Law, the Theory of Promissory Estoppel Does Not Allow Defendant, a Non-signatory, to Compel Plaintiff to Arbitrate her Claims Under a T-Mobile Agreement.

Under the Federal Arbitration Act, arbitration agreements are treated as contracts and the court will "compel arbitration under the Federal Arbitration Act" if there is 'an enforceable written agreement to arbitrate.'" *A.D. v. Credit One Bank, N.A*., 885 F.3d 1054, 1060 (7th Cir. 2018) *quoting Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). When a non-signatory attempts to force arbitration, "traditional principles of state law govern whether an arbitration agreement can be enforced by or against a non-party." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631 (2009)). In

3

Wisconsin, equitable estoppel applies where there is an "(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." *Milas v. Labor Ass'n*, 214 Wis. 2d 1, 11-12, 571 N.W.2d 656, 660 (1997).

### III. The Facts and Reasoning of Hughes Masonry Co. v. Greater Clark Cty. Scho. Bldg. Corp. Do Not Apply to This Case.

Defendant cites *Hughes Masonry Co. v. Greater Clark Cty. Scho. Bldg. Corp.*, 659 F. 2d 836 (7th Cir. 1981) where the Seventh Circuit applied an arbitration clause to a non-signatory subcontractor. [Dkt. 14]. In their Reply, Defendant quotes *Hughes Masonry* in so far to say the "signatory-plaintiff 'is estopped from denying [non-signatory defendant] the benefit of the arbitration clause with regard to the claims that are as intimately founded in and intertwined with the underlying obligations as [signatory's] claim appear to be here.'" (*Id.* at 14). Defendant reasons that Plaintiff's claims against Defendant "are intertwined with her own allegations and claims" against T-Mobile such as a failure "to safeguard private/personal information, including pursuant to T-Mobile's policies." (*Id.*).

This Court considered a case where a non-signatory party sought to invoke *Hughes Masonary* to enforce an arbitration agreement against a mobile phone customer. It concluded that the principle of equity underlying promissory estoppel was not implicated even where a signatory to an arbitration clause was simultaneously pursuing "a claim that is interdependent with [an] arbitrable claim" (which notably is not the case here). *Pagan v. Integrity Solutions Servs.*, 42 F. Supp. 3d 932, 936, 2014 U.S. Dist. LEXIS 124796 (E.D. Wis. 2014). In *Pagan*, a debt collector, Integrity, sought to collect an unpaid bill owed by the plaintiff to AT&T. (*Pagan*, 42 F. Supp. 3d at 933). When plaintiff filed suit against Integrity and AT&T for violations of debt collection statutes, the non-signatory debt collector sought to enforce an arbitration clause contained within

4

the AT&T 'wireless customer agreement' signed by the plaintiff (*Id*.). The Court refused to grant enforcement of arbitration for Integrity, the non-signatory party, against the plaintiff.

The *Pagan* Court found that the circumstances before it were "nothing like" those considered in *Hughes Masonry* (*Id*. at 935). The Court observed that the plaintiff was "not trying to hold Integrity to the terms of the wireless agreement she entered into with the AT&T or otherwise enforce that agreement" but instead "alleges that Integrity violated state and federal statutes." (*Id*.). As such, it could not be "considered inequitable for a signatory to an arbitration agreement to sue a non-signatory to that agreement" because "the signatory would not be taking unfair advantage of the non-signatory or otherwise be engaging in inequitable conduct." (*Id*. at 936).

Defendant mischaracterizes Plaintiff's mentions of T-Mobile in her Complaint as evidence that her claims are "intertwined-claims" with T-Mobile to the extent that estoppel should apply [Dkt. 14, pp.9-10]. These factual references are made by Plaintiff to provide context to support her claims against Defendant and are not based in anyway on actions or omissions of T-Mobile or any provisions of the T-Mobile contract. For instance, Plaintiff cites past examples of widely reported privacy violations at T-Mobile stores as evidence of constructive knowledge and awareness necessary to support her claims of Defendant's duty under the common law to hire and manage its employees with reasonable care. [Dkt. 1, ¶¶1, 2, 4, 17 and 32]. In other paragraphs, Plaintiff makes factual statements about the business of Defendant, namely acting as a licensee and seller of T-Mobile products which necessarily explains why Plaintiff was in the Defendant's establishment in the first place [*Id.* ¶¶ 11, 15, 16, 23, 24 and 26].

## IV. Under the *Scheurer v. Fromm Family Foods LLC* Decisions, Promissory Estoppel Does Not Apply in This Case.

A case before the United States District Court for the Western District of Wisconsin and the subsequent appeal to the United States Court of Appeals for the 7th Circuit involved a claim involving an application agreement featuring an arbitration clause signed by both an employee and an employment agency. *Scheurer v. Fromm Family Foods LLC*, 202 F. Supp. 3d 1040, 2016 U.S. Dist. LEXIS 109773 (W.D. Wis. 2016). See *also Scheurer v. Fromm Family Foods LLC,* 863 F.3d 748. 2017 U.S. App. LEXIS 12743 (7th Cir. 2017). The clause's language required the employee "to arbitrate any disputes with her 'Employer…arising out of or relating to [her] employment or the termination of [her] employment.' (*Scheurer,* 202 F. Supp. 3d at 1042). In *Scheurer,* the plaintiff employee went to work at a grocer where she complained about harassment, was fired and subsequently filed a federal sex harassment and retaliation claim against the same grocer. The grocer, a non-signatory to the arbitration clause, sought to enforce arbitration. (*Id.* at 1042-3).

The *Scheurer* district court found that estoppel was not available under federal or state law to support the enforcement of the subject arbitration agreement. (*Id*. at 1044). The *Scheurer* court noted that the non-signatory employer had not demonstrated any reasonable reliance on the employee's decision to sign her application agreement with the employment agency. (*Id.*). Even if the employer's reliance could be demonstrated, such reliance was unreasonable because the employer knew it was not a party to the agreement. (*Id.*)

On appeal, the 7th Circuit affirmed the lower court's decision. *Scheurer v. Fromm Family Foods LLC,* 863 F.3d 748, 754. 2017 U.S. App. LEXIS 12743 (7th Cir. 2017). The court acknowledged that *Hughes Masonry* stated that a contractor 'cannot rely on the contract when it works to its advantage and repudiate it when it works to its disadvantage.' (*Scheurer,* 863 F.3d at 754 *quoting Hughes Masonry* at 838-9.). However, the *Scheurer* district court distinguished

*Hughes Masonry,* stating that, while the employment application "could inform this inquiry" associated with the plaintiff's sexual harassment claims, the "agreement would not definitely resolve the issue." (*Scheurer*, 202 F. Supp. 3d at 1045). The court therefore concluded that the defendant's potential liability for plaintiff employee's claims would not turn "on whether it breached a provision of the application agreement" meaning the claims were not "inextricably intertwined." (*Id.*). In its ruling, the court narrowed the older *Hughes Masonry* decision stating that, "[t]o the extent the Hughes Masonry reasoning survives Arthur Andersen, it does not apply here." (*Scheurer*, 863 F.3d at 754.).

Applying the *Scheurer* decisions supports the conclusion that estoppel cannot be invoked by Defendant in this case based upon reasonable reliance to Defendant's detriment. T-Mobile clearly defines the parties to which its arbitration clause applies—namely itself. Under the T&C's, it defines "us" as to exclude Defendant. [Dkt. 10-3, p.2.]. The RSA submitted by Defendant defines Defendant as an independent contractor, not an agent or subsidiary [Dkt. 14-1, p.5]. The record demonstrates that T-Mobile and Defendant understood they constitute separate, distinct entities and any therefore any reliance Defendant placed on the arbitration clause would be inherently unreasonable.

Furthermore, Plaintiff's claims in this case do not turn on the application of the T-Mobile user agreements, but instead only serve to "inform this inquiry."[2] Plaintiff does not seek to enforce any T-Mobile contract provisions in her claims. Nowhere in any of Plaintiff's seven claims - three statutory violations and four common law claims - is there any reference to her terms or enforcement of the T-Mobile contract. [Dkt. 1, pp.8-12]. None of the Plaintiff's claims turn on the

---

[2] Defendant concurs to the extent that in their pleadings they state that "there is no basis in law or fact for T-Mobile to be named as a defendant in [Plaintiff's] action." (Dkt. 14, p.10).

breach of any T-Mobile contract provision but instead relate to the acts and omissions strictly and exclusively of Defendant and agents of Defendant.

        **V.    Under Texas Law, Estoppel Cannot Apply to Force Plaintiff to Litigate Her Claims Against Defendant in Arbitration.**

Should the Court choose to apply Texas law, Defendant's motion still fails. In their Texas analysis, Defendant cites two 5th Circuit cases—*Hays v. HCA Holdings, Inc.,* 838 F., 3d 605, 610-12 (5th Cir. 2016) and *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 404 (5th Cir. 2022)—to conclude erroneously that a Texas court would apply an alternative "intertwined-claims" theory to estoppel, rather than the direct benefits estoppel standard, to the facts in this case. [Dkt. 14, 6-7]. Defendant asserts that it "has a 'close relationship' with both" T-Mobile and Plaintiff. [Dkt. 14, p. 7]. Defendant ultimately concludes that Plaintiff must arbitrate her claims because Defendant meets the test under the intertwined-claims theory. (*Id.* at pp. 7-13).

To be clear, the Texas Supreme Court has not applied the "intertwined-claims" theory, a fact recognized by both the *Hays* and the *Newman* courts. In *Hays*, the court chose to apply the theory to the case before it finding that:

> Because Merrill Lynch intimated at the validity of intertwined claims estoppel, because lower courts in Texas have applied the theory, and because arbitration of disputes is strongly favored under federal and state policy, we hold that the Texas Supreme Court, if faced with the question, would adopt intertwined claims estoppel. *Hays,* 838 F. 3d at 612.

Six years later, the *Newman* court noted that the Texas had again chosen not to apply the "intertwined-claims" estoppel theory but felt compelled, due to its own judicial doctrine, to continue assuming it would:

> Yet the Jody James Court again declined to decide the question since, even if intertwined-claims estoppel did exist in Texas, the facts did not support its application. Still, our hands are tied. We

8

already made our Erie-guess, and the Texas Supreme Court has not changed Texas law since. So, the rule of orderliness binds us to assume that intertwined-claims estoppel exists in Texas. *Newman*, 23 F.4th at 404.

What does not require an "Erie-guess" is that, if this case were now before the Texas Supreme Court, no close relationship between Defendant and T-Mobile would be deemed to exist.[3] The *Newman* court noted that "the Texas Supreme Court explicitly rejected applying equitable estoppel to allow two non-signatory subsidiaries to enforce an arbitration agreement their corporate parent had with the plaintiff" because that corporate relationship alone was not enough to qualify the entities as closely related. *Newman v. Plains All Am. Pipeline*, L.P., 23 F.4th 393, 406 (5th Cir. 2022) citing *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 191-95, 50 Tex. Sup. Ct. J. 1030 (2007). Under Texas law, "a close relationship is a term of art, generally requiring formal corporate affiliation." *Id.* citing *Jody James Farms. JV v. Altman Grp., Inc.,* 547 S.W. 3d 624, 640, 61 Tex. Sup. J. 1112 (2018). Unless a special circumstance exists, such as "plaintiffs treat multiple defendants 'as a single unit' in their pleadings, 'raising virtually indistinguishable factual allegations,' no close relationship exists under Texas law. *Newman, 23 F.4th 393* at 405, *quoting Hays, 838 F.3d at 612-613.*

Defendant, by its own admission, has no formal corporate affiliation with T-Mobile. [Dkt. 19, p.2]. Plaintiff has not plead any facts or asserted any claims that treat Defendant and T-Mobile 'as a single unit,' but instead only as two separate, distinct entities. Moreover, Plaintiff has not made any claims against T-Mobile. As such, Defendant, does not meet the definition of closely-related to T-Mobile and therefore estoppel should not apply.

---

[3] The closeness of Defendant and Plaintiff is irrelevant to this analysis as neither of those two parties are attempting to enforce the other's arbitration agreement.
9

**Conclusion**

For the reasons stated above and in the *Plaintiff's Response to Defendant TCC Wireless's Motion to Compel Arbitration,* it is respectfully submitted that this Court should deny the motion to force arbitration.

Dated the 21st day of October, 2025.

LAWTONCATES S.C.

By: *Electronically signed by Andrew J. Hysell*
Andrew J. Hysell, State Bar No.: 1053807
Dixon R. Gahnz, State Bar No.: 1024367
Attorneys for Plaintiff

P.O. Box 2965
1050 E. Washington Ave. Ste. 330
Madison, WI 53703
P: (608) 282-6200
F: (608) 975-2662
ahysell@lawtoncates.com
dgahnz@lawtoncates.com