# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BRIUNA HARPER,**

        **Plaintiff,**

      **v.**                          **Case No. 25-CV-686**

**TCC WIRELESS, LLC,**

        **Defendant.**

## DECISION AND ORDER

### 1. Background

TCC Wireless, LLC, operates over 200 T-Mobile stores in 24 states. (ECF No. 1, ¶ 16.) Briuna Harper, a T-Mobile customer, brought this action against TCC Wireless for events that allegedly occurred when she went to one of its stores on November 9, 2024, to upgrade her phone. (ECF No. 1, ¶¶ 23-26.) According to her complaint, after Harper traded in her old phone, a TCC Wireless employee accessed that phone and downloaded sexually explicit images and videos of Harper that she had saved in a hidden folder. (ECF No. 1 at 7-8, ¶¶ 64-65, 67-68.)

This case got off to a bad start. The plaintiff filed this action in the Green Bay division despite alleging, "All events giving rise to this claim occurred in Sheboygan County, Wisconsin." (ECF No. 1 at 3, ¶ 12.) Sheboygan is in the Milwaukee division. *See* E.D. Wis, Counties Served by Division, https://www.wied.uscourts.gov/counties-

served-division; Gen. Ord. Re: Assignment of Cases to the U.S. Dist. J. Designated to Hold Ct. in Green Bay, WI (Nov. 10, 2004) (E.D. Wis.). The court has discretion whether to transfer an action when it is filed in the wrong division, particularly in light of the fact that the divisions in this district are administrative rather than statutory. *See* Gen. Ord. (Nov. 10, 2004) (E.D. Wis.); 28 U.S.C. § 1869(e); *compare* 28 U.S.C. § 93(a) *with* 28 U.S.C. § 130(a); *Grossman v. Smart*, No. 95-1178, 1995 U.S. App. LEXIS 38339, at *3 (7th Cir. Dec. 29, 1995) ("Where a district lacks statutory divisions, courts have discretion under § 1404(c) to select any designated location within the district as the place of trial."); *cf. Craig v. Harrah's Entm't, Inc.*, No. 05-CV-812-DRH, 2006 U.S. Dist. LEXIS 19164, at *3 (S.D. Ill. Apr. 13, 2006) (discussing the distinction between administrative and statutory divisions). The defendant having not objected, *see* 28 U.S.C. § 1406(b), the court declines to reassign the case to a judge in the Milwaukee division.

The plaintiff also indicated on the Civil Cover Sheet that the court's jurisdiction was based on the diversity of the parties. (ECF No. 1-1 at 1.) Relying on that, the court reviewed TCC Wireless's disclosure statement and found that it failed to identify its citizenship. (ECF No. 7); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006) ("The citizenship of a limited liability company is that of its members and its members may include partnerships, corporations, and other entities that have multiple citizenships. A federal court thus needs to know each member's citizenship, and if necessary each member's members' citizenships." (citations omitted)). The court ordered TCC Wireless to submit an amended disclosure

statement but in doing so erroneously referred to Civil Local Rule 7.1(a)(2) rather than Federal Rule of Civil Procedure 7.1(a)(2). (ECF No. 18.)

Rightfully confused as to why the court was ordering it to submit the irrelevant information required under Civil Local Rule 7.1(a)(2), TCC Wireless nonetheless complied. (ECF No. 19.) Only then did the court recognize that the cover sheet was incorrect and this action was before the court based not on the diversity of the parties—which the complaint[1] and TCC Wireless's disclosure statements have not yet established—but under 28 U.S.C. § 1331 because the plaintiff has alleged a federal cause of action (ECF No. 1 at 8, ¶¶ 72-74).

With the jurisdictional hurdle cleared, the court can turn to TCC Wireless's motion to compel arbitration. (ECF No. 10.)

## 2. Defendant's Motion to Compel Arbitration

### 2.1. Applicable Law

The Federal Arbitration Act (FAA) reflects a national policy favoring arbitration. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). The court "will compel arbitration under the Federal Arbitration Act 'if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate.'" *A.D. v. Credit One Bank,*

---

[1] The complaint contradictorily alleges, "Defendant TCC Wireless, LLC ('TCC Wireless') is a corporation incorporated in the state of Delaware with a principal place of business of 160 Greentree Dr. Suite 101, Dover, Delaware 19904" (ECF No. 1 at 2, ¶ 3) and "all Defendants are registered corporations of the State of Delaware" (ECF No. 1 at 3, ¶ 9).

3

*N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)). This reflects a view that an agreement to arbitrate should be enforced like any other contract. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018).

### 2.2.  T-Mobile's Terms and Conditions

T-Mobile's Terms and Conditions state:

These T&Cs are an agreement between you on behalf of yourself, your Authorized Users, any person on your account, and any person you allow to use the Services, Product or your Device, and us, T-Mobile USA, Inc., and our controlled subsidiaries, assignees, and agents ("us", "we", "our" or "T-Mobile").

\* \* \*

These Terms & Conditions ("T&Cs") contain important information about your relationship with us, including individual mandatory binding arbitration of disputes between us, instead of class actions or jury trials. By Accepting these T&Cs, you agree, on behalf of yourself, any person on your account, an Authorized User, and any person you allow to use the Services, Product, or your Device, to be bound by these provisions.

\* \* \*

By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit.

***Individualized Dispute Resolution and Arbitration.* YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES, OF ANY NATURE, INCLUDING TORT AND STATUTORY CLAIMS, IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES OR PRODUCTS,**

4

**INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD, ON AN INDIVIDUAL BASIS, THE SAME DAMAGES AN RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES**

This includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below).

(ECF No. 10-3 at 1, 2, 5 (emphasis in original).)

### 2.3. The Terms of the Arbitration Provision

Harper does not dispute that she agreed to arbitrate her disputes with T-Mobile. The original receipt for Harper's phone and service, as well as the receipt for her November 9, 2024, upgrade both state, "If you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions and any terms specific to your rate plan." (ECF Nos. 10-2 at 1; 10-4 at 1.)

While acknowledging her obligation to arbitrate disputes with T-Mobile, Harper argues that this action is not subject to arbitration because it is against TCC Wireless, not T-Mobile.

However, the arbitration provision reaches beyond disputes with the single corporate entity known as T-Mobile. TCC Wireless asserts: "In short, Plaintiff entered into no less than four different agreements to arbitrate disputes with T-Mobile and

its agents, dealers, or authorized retailers, of which TCC Wireless is one" (ECF No. 10-1 at 5; *see also* ECF No. 10-1 at 11.) TCC Wireless's formulation, however, is not a quotation from the contract; it is a composite assembled from two separate provisions that appear in different sections of the Terms and Conditions.

One provision of the arbitration agreement states: "This includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) whenever you also assert claims against us in the same proceeding." (ECF Nos. 10-3 at 5; *see also* 10-7 at 3.) Another provision defines "T-Mobile" as encompassing its "subsidiaries, assignees, and agents." (ECF No. 10-3 at 2.) Thus, one provision reaches "suppliers, dealers, authorized retailers, or third-party vendors," whereas a second provision reaches "subsidiaries, assignees, and agents." The court must assess these distinct provisions individually.

The first provision is sort of the arbitration equivalent of supplemental jurisdiction—it allows claims that would not otherwise be subject to arbitration to tag along with a related action that is. By its own terms, the provision regarding the arbitrability of claims against "suppliers, dealers, authorized retailers, or third-party vendors" applies only when there is also a concurrent claim against T-Mobile.

One court read a nearly identical provision differently. *Warciak v. Subway Restaurants, Inc.*, No. 16 C 8694, 2017 WL 5895159, at *5 (N.D. Ill. Apr. 7, 2017), *rev'd and remanded*, 880 F.3d 870 (7th Cir. 2018). Seizing on "includes," the court

interpreted the provision as requiring arbitration against a dealer, regardless of whether the plaintiff simultaneously asserted a claim against T-Mobile. *Id.* at *5.

TCC Wireless argues that *Warciak* is "[i]nstructive and dispositive." (ECF No. 14 at 3.) To the contrary, not only are decisions of district courts are not binding, *Matheny v. United States*, 469 F.3d 1093, 1097 (7th Cir. 2006), any persuasive value was largely negated when the Court of Appeals implicitly rejected this conclusion of the district court and held that the arbitration agreement between T-Mobile and the plaintiff's mother bound neither the plaintiff nor defendant Subway, *Warciak*, 880 F.3d at 872-73.

Interpreting the "other parties" provision as requiring arbitration whenever a claim is asserted against an affiliate such as a dealer, regardless of whether a claim is concurrently asserted against T-Mobile is inconsistent with a natural reading of the provision. In a factually similar case where a plaintiff sued both T-Mobile and an employee of the store where she upgraded her phone, the New Jersey appellate court noted that her claims against the store employee were arbitrable only because she had asserted claims against T-Mobile in the same action. *V.S. v. T-Mobile*, No. A-0973-21, 2022 N.J. Super. Unpub. LEXIS 1094, at *21 (Super. Ct. App. Div. June 21, 2022).

Particularly in the legal context, the word "includes" may be read as if it says, "includes but is not limited to." It is "illustrative and not limitative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). It denotes that what follows is one example, but not necessarily the only example. *See Schneider Nat'l Leasing, Inc. v.*

*United States*, 11 F.4th 548, 554 (7th Cir. 2021) ("The word 'including' is a broadening term of illustration…."); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015). Thus, saying, "this includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) whenever you also assert claims against us in the same proceeding," says only that this is one example where the arbitration agreement applies. It says nothing about whether arbitration does or does not apply to "any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) whenever you [*do not*] also assert claims against us in the same proceeding." Thus, the court rejects TCC Wireless's argument Harper's claims are subject to arbitration because TCC Wireless is allegedly a dealer or authorized retailer of T-Mobile. For claims against, for example, a T-Mobile retailer like TCC Wireless, to be arbitrable when there is not a concurrent claim against T-Mobile, authority must be found elsewhere in the agreements between Harper and T-Mobile.

Therefore, the court looks to whether TCC Wireless is within the scope of the agreements' definition of "T-Mobile," and specifically, whether TCC Wireless is T-Mobile's "agent." TCC Wireless, however, does not develop an argument that it is T-Mobile's agent. *Cf. Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (noting that undeveloped arguments are waived). And insofar as the bald assertions of agency in its initial brief could be seen as presenting the argument, aside from a footnote

noting those earlier assertions (ECF No. 16 at 5, fn. 2), TCC Wireless abandons it in reply.

That TCC Wireless sells T-Mobile's products and services does not necessarily render it an agent of T-Mobile's any more than a corner convenience store is an agent for every brand of product it sells. This distinction is underscored by the separate provision in the Terms and Conditions quoted above allowing related claims against "suppliers, dealers, authorized retailers, or third-party vendors" to tag along to arbitration only if there is also a claim against T-Mobile. If every "authorized retailer" was T-Mobile's "agent," the supplemental provision would be unnecessary because, as an agent, every authorized retailer would already be within the Terms and Conditions' definition of "T-Mobile." But for an "authorized retailer" to compel arbitration regarding the claim of a T-Mobile customer when the customer did not also assert a claim against T-Mobile, the authorized retailer must show that it is within the definition of "T-Mobile" in the Terms and Conditions. TCC Wireless has failed to demonstrate that it is within the definition of "T-Mobile" in the Terms and Conditions, and thus it has failed to demonstrate that the terms of Harper's agreement with T-Mobile requires her to arbitrate her claim against TCC Wireless.

### 2.4. Estoppel

In reply, TCC Wireless offers a new argument—estoppel. New arguments for relief that are raised for the first time in reply are not properly before the court. *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020); *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012). In raising estoppel, TCC Wireless was not merely replying to Harper's

brief in opposition but rather raising new and distinct arguments. By waiting until its reply, it deprived Harper of the opportunity to address these new arguments and address this new evidence. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). Thus, Harper moved to strike the declaration and documents TCC Wireless submitted with its reply. (ECF No. 15.)

TCC Wireless's failure to raise this argument in its initial brief is reason enough for the court to find it waived and thus deny TCC Wireless's motion to compel arbitration. *O'Neal*, 961 F.3d at 974. But the primary harm in a movant's failure to raise an argument until its reply is that it leaves the nonmovant no opportunity to respond. *White*, 8 F.4th at 552. Thus, the court has discretion to allow the non-movant to submit a sur-reply and thus consider the merits of the argument. Therefore, the court denied Harper's motion to strike and gave her an opportunity to submit a sur-reply (ECF No. 20), which she has now done (ECF No. 21).

"[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Thus, equitable estoppel is an exception to the "bedrock principle[]" that "an arbitration agreement generally cannot bind a non-signatory." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018). TCC Wireless raises the question of whether Wisconsin or Texas law governs that application of equitable estoppel, although it contends that the result is the same under either state's law. (ECF No. 14 at 6.)

T-Mobile's Terms and Conditions state that, aside from the Federal Arbitration Act and applicable federal law, the agreement is governed by the state law of the state of the customer's billing address. (ECF No.14 at 5-6.) Harper's billing address is (and was) in Texas, and therefore TCC Wireless suggests that Texas law should govern the question of whether equitable estoppel applies.

To rely on a provision of an allegedly inapplicable contract in order to determine the applicability of the contract requires the court to presuppose the validity of the contract. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (quoting *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008); *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 661 n.9 (10th Cir. 2006)); *but see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (applying Nevada law pursuant to choice of law provision when "the parties have not suggested that any other law is applicable"). Or more simply, it puts the cart before the horse.

Thus, the court will apply Wisconsin law both because Wisconsin's law regarding conflict of laws support that result, *see Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, ¶40, 290 Wis. 2d 642, 714 N.W.2d 568, and a choice of law provision in a contract does not apply to a dispute over whether the contract applies to the parties' dispute, *see Winkelman v. Midland Credit Mgmt.*, No. 3:23-cv-407 (VAB), 2024 U.S. Dist. LEXIS 132776, at *5 n.1 (D. Conn. July 27, 2024).

### 2.4.1. Equitable Estoppel

Wisconsin courts have long recognized that equitable estoppel may result in a nonparty being subject to a contract. *Dunn v. Pertzsch Constr. Co.*, 38 Wis. 2d 433, 437, 157 N.W.2d 652, 654 (1968) (citing cases). "There are four elements of equitable estoppel: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶33, 291 Wis. 2d 259, 715 N.W.2d 620.

In *Pagan v. Integrity Sol. Servs.*, 42 F. Supp. 3d 932 (E.D. Wis. 2014), the court addressed the question of equitable estoppel vis-à-vis an arbitration agreement. The plaintiff sued a debt collector alleging that it violated the Fair Debt Collection Practices Act when it tried to collect an unpaid cellphone bill. The court rejected the debt collector's effort to compel arbitration based on the arbitration agreement between the plaintiff and the cellphone provider. Finding that the plaintiff had "not taken any action or non-action that has induced reasonable reliance by [the debt collector] or that has caused [it] any detriment" equitable estoppel did not apply. *Id.* at 934.

In *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748 (7th Cir. 2017), the Court of Appeals for the Seventh Circuit, applying Wisconsin law, held that an employee's arbitration agreement with a temporary staffing service did not require her to arbitrate her sexual discrimination claims against the business the staffing service placed her with. The court underscored that the defendant did not know of

the arbitration provision in the contract with the staffing agency until discovery and thus could not have relied on it. *Id.* at 754.

In an unpublished decision, the Wisconsin Court of Appeals addressed the question of when a non-party to an arbitration agreement can rely on equitable estoppel to compel arbitration. *Mayer v. Soik*, 2022 WI App 7, 400 Wis. 2d 542, 970 N.W.2d 572, 2021 Wisc. App. LEXIS 363. "Generally speaking, the concept of equitable estoppel prevents a party from repudiating a contract where his or her action or nonaction in regards to that contract induced another party to reasonably rely thereon, to the other party's detriment." *Id.*, ¶ 23. Looking to how courts around the country addressed the issue, the court noted that the Court of Appeals for the Ninth Circuit held that equitable estoppel

> applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory. Merely making reference to an agreement with an arbitration clause is not enough. Plaintiff must rely on the terms of the written agreement in asserting its claims against the nonsignatory.

*Id.*, ¶ 23 (italics, brackets, and ellipses omitted) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013)). The Court of Appeals for the Second Circuit found that a nonsignatory may enforce an arbitration agreement only if it was predictable that the relationship between the signatories would include the nonsignatory. *Mayer*, 2022 WI App 7, ¶ 24 (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)). Further noting that a court is more likely to compel arbitration when it is the non-signatory seeking arbitration (as opposed to when it is the non-signatory who is involuntarily forced to arbitrate), *id.*

at n.10 (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir 2003)), the court applied these principles to hold that a corporate official could enforce the arbitration agreement between the plaintiff and the corporation when the plaintiff sued the official directly, *id.* at ¶¶ 37-38.

TCC Wireless argues that it "unequivocally relied on the agreements to arbitrate that Plaintiff entered into with TCC Wireless on October 27, 2023." (ECF No. 14 at 15.) But as discussed above, Harper never actually or purportedly entered into any agreement to arbitrate disputes with TCC Wireless. She agreed to arbitrate disputes only with T-Mobile.

TCC Wireless may have subjectively believed that T-Mobile's arbitration agreement applied to disputes between it and T-Mobile's customers, but Harper did not induce that misunderstanding. Nor is there evidence that Harper knew of or could reasonably expect TCC Wireless's reliance such that she was expected to speak up and correct it. Harper merely agreed to enter into an arbitration agreement with a distinct entity and TCC Wireless misunderstood its scope. To apply equitable estoppel in the way TCC Wireless proposes would hold individuals responsible for subjective understandings and expectations of third parties that they had no role in inducing. There can be no estoppel if Harper did not induce TCC Wireless's reliance. *See Affordable Erecting*, 2006 WI 67, ¶33. Thus, under traditional equitable estoppel principles, the arbitration agreement between Harper and T-Mobile does not require her to arbitrate her dispute with TCC Wireless. (*Cf.*, *e.g.*, *Pagan*, 42 F. Supp. 3d at 934 (rejecting debt collector's equitable estoppel argument that plaintiff's arbitration

agreement with cellphone provider applied to plaintiff's claims arising from efforts to collect debt incurred with the service provider).

### 2.4.2. Intertwined Claims Estoppel

TCC Wireless also offers a different estoppel argument—what some courts have called "intertwined claims estoppel." (ECF No. 14 at 6-13.) "Intertwined claims estoppel involves 'compelling arbitration when a nonsignatory defendant has a close relationship with one of the signatories and the claims are intimately founded in and intertwined with the underlying contract obligations.'" *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (quotation marks and brackets omitted) (quoting *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 193, 50 Tex. Sup. Ct. J. 1030 (2007)).

TCC Wireless contends that the equitable estoppel analysis that the Wisconsin Court of Appeals "applied in *Mayer* is similar if not identical to the intertwined-claims estoppe[l] under Texas law as applied by the Fifth Circuit." (ECF No. 14 at 13.) That assertion tends to overstate the court's holding in *Mayer*. But the court of appeals nonetheless recognized that estoppel allowed an arbitration provision between a company and the plaintiffs to be applied to a dispute between the plaintiffs and a company official.

The court in *Mayer* relied, in part, on the fact that the plaintiff's claims against the company official depended on provisions of the agreement between the plaintiffs and the company. *See Mayer*, 2022 WI App 7, ¶¶ 35-37. Applying the arbitration provision under these circumstances was consistent with traditional notions of estoppel; a plaintiff should not be able to simultaneously rely on parts of a contract

while disclaiming other provisions. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks omitted))). In other words, if there is enough of a connection between the contract and the plaintiff's claims that the plaintiff is pointing to the contract to support her claims against the non-signatory defendant, that non-signatory defendant is likely to have enough of a connection to the contract to enforce the arbitration clause.

This court must apply Wisconsin law as the Wisconsin Supreme Court has applied it. *Gecker v. Estate of Flynn (In re Emerald Casino, Inc.)*, 867 F.3d 743, 765 (7th Cir. 2017) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940)). "When a state's high court has not ruled on a matter, a federal court's job is to decide the case like the state's high court would if presented the issue." *Id.* (citing *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016)). The decisions of lower state courts inform that analysis, but they are not binding. *Id.* If a federal court is convinced that a state supreme court would decide a question differently than a lower state court, the federal court must answer the question accordingly. *Id.* (quoting *West*, 311 U.S. at 237).

The court of appeals' decision in *Mayer* does not represent a broad endorsement of intertwined claims estoppel. At best, it can be read as surveying the law on the matter and concluding that under the specific facts of that case, it was appropriate to

16

hold that an agreement to arbitrate with a corporation applied to a claim against a corporate officer. This is consistent with the general view that application of this species of estoppel depends heavily on the facts. *See Scheurer v. Fromm Family Foods LLC*, 202 F. Supp. 3d 1040, 1044-45 (W.D. Wis. 2016) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999)).

The persuasive value of *Mayer* is further undermined by the fact that it is an unpublished decision and thus is not afforded precedential weight even in Wisconsin courts. *See* Wis. Stat. § 809.23(3)(b). Although the panel of judges that decided the case recommended that the decision be published, *Mayer*, 2022 WI App 7, ¶ 41, the committee of judges ultimately tasked with determining whether a decision should be published rejected that recommendation, *see* Wis. Stat. § 809.23(2).

TCC Wireless devotes the bulk of its estoppel argument to demonstrating that that there is a close relationship between T-Mobile and TCC Wireless (ECF No. 14 at 7-11), which is an element of intertwined claims estoppel that the Fifth Circuit concluded is Texas law, *see Hays*, 838 F.3d at 610.

There appears little basis to dispute that a close relationship exists between TCC Wireless and T-Mobile. Even Harper's complaint opens more like she is attempting to state a claim against T-Mobile rather than TCC Wireless:

> 1. T-Mobile is the third largest wireless carrier in the United States. It has over 20,000 storefront locations.
>
> 2. T-Mobile and its agents fail to safeguard personal data of its customers and does not use customary practices or procedures to protect its customers' privacy and information. …

17

4. For many years retail store employees have obtained sensitive information about T-Mobile customers, including explicit photographs and videos. For instance, in October of 2022 a T-Mobile customer in Washington had their personal information, including intimate photos and videos stolen from her phone by an employee of a T-Mobile store.

(ECF No. 1 at 1-2, ¶¶ 1-4.)

However, TCC Wireless offers little argument in terms of how Harper's claims are intertwined with her contracts with T-Mobile. It argues, "Because each one of Plaintiff's seven alleged claims concern issues relating to the unauthorized disclosure of private/personal information stored on a mobile phone (*i.e.*, Equipment), Plaintiff's claims absolutely are intimately founded in and intertwined with the underlying contract obligations (*see supra*)." (ECF No. 14 at 12-13.)

It is unclear what TCC Wireless may be referring to when it says, "see supra." The preceding portion of the brief largely discussed the relationship between T-Mobile and TCC Wireless (and specifically TCC Wireless's obligations to T-Mobile with respect to the safeguarding of the information of T-Mobile's customers) and outlined Harper's claims. It did not connect those claims to the terms of the contract between Harper and T-Mobile.

Later, TCC Wireless states, "To reiterate, Plaintiff's allegations and claims derive from TCC Wireless's 'privacy' obligations as a T-Mobile 'licensee' and "authorized distributor of T-Mobile products and services, and operates retail stores selling cellular phones, accessories, and cellular phone plans, among things, for T-Mobile." (ECF No. 14 at 13 (internal citation omitted); *see also* ECF No. 14 at 14 ("As set forth in detail above, Plaintiff's claims are intertwined with her own allegations

and claims that T-Mobile and its 'agent[ ]'/'licensee' failed to safeguard private/personal information, including pursuant to T-Mobile's policies.").) However, these assertions are not borne out by the allegations in Harper's complaint.

Granted, the complaint contains many references to T-Mobile. However, these references are generally surplusage, reading like counsel started drafting a complaint against TCC Wireless and T-Mobile, only to later omit T-Mobile as a defendant. Only one reference to T-Mobile could be seen as readily connecting Harper's contracts with T-Mobile to the claims she presents against TCC Wireless. She alleges:

> T-Mobile and its partner stores represent to its customers, including plaintiff, that it has safeguards in place to protect consumer information. For instance, T-Mobile's website provides:
>
>> We use administrative, technical, contractual, and physical safeguards designed to protect your data. For example, when you contact by phone or visit us in our stores, we have procedures, in place to make sure that only the primary account holder or authorized users have access.

(ECF No. 1 at 5, ¶ 32.)

However, Harper does not appear to rely on that alleged representation as the basis for her negligent misrepresentation claim (or any other claim). Rather, in support of that claim she alleges, "Defendant misrepresented to the public that a person could bring their mobile phone to their [sic] store for purposes of an upgrade without personal, private information being put at risk." (ECF No. 1 at 10, ¶ 85.) Harper offers only this bald assertion; she does not describe any specific representation allegedly made by TCC Wireless. But what is clear is that by referring

to a representation by the "defendant" she is not relying on the representation by T-Mobile she referenced earlier.

Thus, TCC Wireless has failed to demonstrate that Harper is attempting to simultaneously rely on and disclaim her agreements with T-Mobile or that her claims are otherwise intimately intertwined with her contracts with T-Mobile. This is not to say that Harper's agreements with T-Mobile will be irrelevant. The court can foresee how provisions of those agreements may be relevant to TCC Wireless's plausible defenses to certain of Harper's claims. For example, the terms of her trade-in agreement with T-Mobile state that she must "remove all Device data and personal information, passwords, security software, or user locks." (ECF Nos. 10-5 at 1; 10-6 at 2; *see also* ECF Nos. 10-3 at 10; 10-6 at 4.)

TCC Wireless, however, does not make this argument, and it is not the court's role to make a party's argument for it. *United States v. McGhee*, 98 F.4th 816, 824-25 (7th Cir. 2024); *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (quoting *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 842 (7th Cir. 2010)). For present purposes it is sufficient that this sort of relationship does not satisfy the standard of interconnectedness required for the court to hold that the arbitration provision in Harper's contracts with T-Mobile apply to her dispute with non-signatory TCC Wireless. *See Ohanian v. Apple Inc.*, 2021 U.S. Dist. LEXIS 43852, at *17-18 (S.D.N.Y. Mar. 9, 2021) (rejecting Apple's argument that plaintiff's arbitration agreement with T-Mobile required arbitration of claims against Apple because plaintiff's claim referred to subjects covered by T-Mobile's Terms and Conditions).

### 3. Conclusion

Harper agreed to arbitrate any dispute she had with T-Mobile. However, her action is not against T-Mobile but rather TCC Wireless, the operator of the store through which she traded in her old phone. Although T-Mobile's arbitration agreement is broad and its terms extend to disputes beyond those with the corporate entity commonly referred to as T-Mobile, the defendant has failed to show that it extends to a retail affiliate like TCC Wireless. TCC Wireless's alternative estoppel arguments fail because it has failed to show that Harper induced TCC Wireless to rely on her arbitration agreement with T-Mobile or that the claims that she asserts against TCC Wireless are sufficiently intertwined with her contracts with T-Mobile. In the absence of an arbitration agreement between TCC Wireless and Harper, TCC Wireless cannot rely on the arbitration agreement between Harper and T-Mobile to compel Harper to arbitrate this action. Accordingly,

**IT IS THEREFORE ORDERED** that TCC Wireless's motion to compel arbitration (ECF No. 10) is **denied**.

Dated at Green Bay, Wisconsin this 18th day of November, 2025.

*s/Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge